[L. A. No. 6277.   In Bank.—April 6, 1920.]

## EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—DEATH OF AUTOMOBILE DRIVER—VIOLATION OF INSTRUCTIONS IN RETURNING FROM BUSINESS ERRAND—NONLIABILITY OF EMPLOYER.—An award of compensation for injuries resulting in the death of the driver of an automobile from the overturning of the machine while returning from a business errand for his employer is not justified on the theory that at the time of the accident he was discharging a duty incident to his employment, where in returning to his employer's place of business he, in violation of instructions, departed from the usual and direct road and went several miles out of his proper course, where the accident occurred.

[2] ID.—INJURY IN COURSE OF EMPLOYMENT — BURDEN OF PROOF. — Under the Workmen's Compensation Act, the burden of proving that the injury was received in the course of employment is upon the employee.

PROCEEDINGS on Certiorari to review an award of the Industrial Accident Commission.   Award annulled.

The facts are stated in the opinion of the court.

George H. Moore  for Petitioner.

A. E. Graupner  for Respondents.

KERRIGAN, J., *pro tem.*—Application for a writ of review to annul an award of the Industrial Accident Commission.

On February 20, 1919, June Boatman, an employee of one Freeman A. McKenzie, conducting business under the name of City Garage, at San Pedro, California, was injured by the overturning of an automobile which he was driving, from which injuries he died.  On said day he had been directed by his employer to tow a disabled automobile from

---

1.  Disobedience precluding recovery under Workmen's Compensation Act, notes, Ann. Cas. 1913C, 17; 4 A. L. R. 116.

San Pedro to Los Angeles and, after delivering it at a given address, to return immediately. He proceeded to carry out his instructions and, with a companion named Glen Park, whom he had invited to accompany him, he executed his commission and started on the return journey. Instead of following the only direct and regular road of travel, which was by the way of Harbor boulevard, he with his companion departed therefrom, going first out of his proper course about three miles in an easterly direction to the city of Vernon. There he made a stop and purchased a jug of wine. Resuming his trip he again reached the main road, and then pursued one of three courses: Crossing this main road he went west, taking a direction which would add about twelve miles to the length of the return journey; or, after regaining the main road, he proceeded along it a distance of about six miles to a point a little north of Gardena, and there turned west, and, passing through Redondo, reached the point where the accident occurred; or (and which seems most likely) he remained on the main road, or Harbor boulevard, until he came to a point about four miles from San Pedro, and there made his detour westerly, traveling in the direction of Harbor City, and so arrived at the aforesaid point of accident.

It may be stated preliminarily that the evidence shows that Boatman's companion, Park, had consumed part of the wine purchased at Vernon and was intoxicated at the time of the overturning of the automobile, but there is a conflict in the evidence as to whether or not Boatman had partaken of it, so that we will not review the finding of the commission that the upsetting of the machine cannot be attributed to any lack of skill on the part of its driver induced by a state of inebriety. [1] We find ourselves, however, unable to agree with the learned commission in its conclusion that any reasonable inference can be drawn from the evidence that Boatman, at the time and place of the accident, was discharging a duty incident to his employment. [2] According to the fundamental rule in compensation cases, the burden of proving that the injury to the employee was received in the course of his employment was on the claimant. Here there was no direct evidence, nor any fair inference based on the evidence, tending to support the conclusion of the commission in that behalf. As before

stated, the accident occurred on a road at right angles to the regular and usual route of travel between Los Angeles and San Pedro, at a point approximately two miles westerly thereof, and at a place where it cannot be reasonably assumed from any evidence in the case that the deceased was pursuing the course of his employment. The evidence shows that the deceased disregarded his employer's instructions to return to San Pedro immediately upon the completion of his errand in Los Angeles, and on the whole tends strongly to support the contention of the petitioner that at the time of the accident, as well as much of the time immediately prior thereto, he had temporarily abandoned the business of his employer in favor of some business or, possibly, frolic of his own. If he had taken, as the evidence shows he ought to have done, the usual and direct road in returning to his employer's place of business, following the instructions given to him, he could not have been at the point where he was injured, and would not have been exposed to that particular peril.

While no case has been cited which in the particular facts is directly in point, the authorities in this state support our conclusion. In *Casualty Co.* v. *Industrial Acc. Com.*, 176 Cal. 530, at page 533, [169 Pac. 76], it is said: "An employer cannot be held liable under our Compensation Act unless the accident arises out of, and in the course of, the employment, and of course it devolves on a claimant to establish this fact by evidence from which such a conclusion is fairly inferable. . . . But here, in view of the admitted facts, considered in connection with what we deem established by the record as to the situation of deceased at the time of the accident, there appears no warrant for holding that the accident arose out of and in the course of the employment. It happened during the hour when the deceased was obligated to be on duty, and also on the premises of the employer, but the record negatives any inference that decedent in leaving and going away from the floor where it was his business to be was engaged on any mission having any connection, direct or indirect, with the service for which he was employed."

In *Sherer & Co.* v. *Industrial Acc. Com.*, 175 Cal. 615, 618, [166 Pac. 318], we find this language: "There are two sorts of ways of frequent occurrence in which a workman

might go outside the sphere of his employment—the first one, when he did work he was not engaged to perform, and, second, when he went into a territory with which he had nothing to do."

And in *Northwestern Pac. R. R. Co.* v. *Industrial Acc. Com.*, 174 Cal. 297, 306, [163 Pac. 1000], our supreme court construes the employer's liability under the statute we are considering as follows: "When a servant of his own accord and without the direction of his master steps outside the scope of his employment, whether on the master's business or his own, the master owes him no duty as to the danger he encounters, and he is not liable for the injury received."

There is some evidence in the record which tends to support the supposition that the accident occurred when Boatman was turning the car intending to direct its course toward San Pedro; but it cannot be reasonably contended that, had he successfully executed this maneuver, by which his car would thereafter have been headed in the direction if his ultimate destination, he was at the moment of the accident engaged in the business of his employment. Certainly until he arrived at the regular road which he had left for the purpose of making his detour he must be regarded as returning from a mission of his own if, as we have held, his side trip in the direction of Harbor City was at least a temporary abandonment of his employer's business.

It follows that the award should be annulled, and it is so ordered.

Angellotti, C. J., Lennon, J., Wilbur, J., Olney, J., and Shaw, J., concurred.