[L. A. No. 7516. In Bank.—August 31, 1923.]

A. P. TARTAR, Petitioner, v. THE INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—FINDINGS—EVIDENCE—CERTIORARI. The findings of the Industrial Accident Commission upon questions of fact are conclusive, and are not subject to review where there is any substantial evidence to support them.

[2] ID.—EVIDENCE—INFERENCES—FINDINGS—CERTIORARI.—While a reviewing court has no power to weigh the effect of positive evidence, it is within its province, in reviewing an award of the

Industrial Accident Commission based wholly upon circumstantial evidence, to determine whether there are inferences reasonably deducible from the facts to sustain the commission's findings, which may not rest on conjecture or guesswork.

[3] ID.—FINDINGS—EVIDENCE.—There must be direct evidence or a fair inference based on the testimony tending to support the conclusion of the Industrial Accident Commission, or it will not be upheld.

[4] ID.—INJURY TO EMPLOYEE — EMPLOYMENT BY PETITIONER — FINDING—INFERENCES—EVIDENCE.—In this proceeding to annul an award of the Industrial Accident Commission to an injured employee, the inferences drawn by the commission from the evidence were sufficient to support its finding that the employee at the time of his injury was in the employ of petitioner.

PROCEEDING in Certiorari to annul an award by the Industrial Accident Commission allowing compensation. Award affirmed.

The facts are stated in the opinion of the court.

David D. Stuart and Hubert Starr for Petitioner.

A. E. Graupner and Warren H. Pillsbury for Respondents.

WASTE, J.—Petitioner seeks an annulment of an award of the Industrial Accident Commission upon the ground that there is no evidence to sustain the findings upon which the Commission based its decision that the applicant was entitled to recover. The return of the Commission discloses that support for the award rests solely upon disputable inferences arising from facts of a circumstantial nature, the weight of which petitioner contends was overcome by positive and uncontradicted evidence. [1] It is well settled that the findings of the Industrial Accident Commission upon questions of fact are conclusive, and are not subject to review where there is any substantial evidence to support them. (*Southern Pac. Co.* v. *Industrial Acc. Com.*, 177 Cal. 378, 381 [170 Pac. 822]; *Western Indemnity Co.* v. *Industrial Acc. Com.*, 182 Cal. 709, 720 [190 Pac. 27].) [2] But, while this court has no power to weigh the effect of positive evidence (*Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591, 594 [203 Pac. 112]), it is within its province, in reviewing

an award based wholly upon circumstantial evidence, to determine whether there are inferences reasonably deducible from the facts to sustain the Commission's findings, which may not rest on conjecture or guesswork. (*Clapp's Parking Station* v. *Industrial Acc. Com.*, 51 Cal. App. 624, 627 [197 Pac. 369].) [3] There must be direct evidence or a fair inference based on the testimony tending to support the conclusion of the Commission, or it will not be upheld. (*Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 182 Cal. 612 [187 Pac. 42].) If it cannot be said in this case that the inferences drawn by the Commission are sufficient to raise a conflict, in the light of the positive evidence produced by the petitioner, the award must be annulled.

[4] The sole question presented is whether or not Robert H. Smithers, the applicant before the Commission, was, at the time of the injury, in the employ of petitioner, who for many years conducted a jewelry store in the city of Los Angeles, maintaining an optical department as an adjunct thereto. There is no direct evidence to that effect. In August, 1921, Smithers applied at petitioner's store for employment as a bench worker and assistant in optometry. His application was first made to Dr. R. E. Walters, one of the respondents here, who appeared to be the head of the optical department. The applicant and Dr. Walters "talked it over," and Dr. Walters told Smithers he "would have to see Mr. Tartar before anything could be done." Smithers thereupon gave his references to Mr. Tartar and was asked by the latter concerning his schooling, ability, and habits. He was informed that "if it was all right with Mr. Walters, he [Tartar] thought it would be all right . . . that they would try me out for a week." With this understanding Smithers went to work. He was injured October 7, 1921, by the explosion of an alcohol lamp he was using in the course of his employment. He received extensive burns, and no question is raised as to the nature and extent of his injuries.

Smithers filed an application with the Industrial Accident Commission for compensation, alleging that he was injured "in the course of his employment by A. P. Tartar." The latter answered, denying that he was the owner of the optical business or that Smithers was ever in his employ. When the matter came on for hearing, Dr. R. E.

Walters, who was personally present, asserted that he, and not Tartar, was the employer. The referee for the Commission thereupon made Dr. Walters a party defendant to the cause. The established facts relied on by Smithers in support of his claim that the defendant A. P. Tartar was in fact his employer are: When he applied to Dr. Walters at the store he was not given employment until after he had been referred to Mr. Tartar. The jewelry store was located at Eighth and Spring Streets. The optical department was located in one corner of the establishment adjacent to the Eighth Street entrance. It was not separated from the other departments. There were three small signs in and about the optical department, bearing the legend, "R. E. Walters, Optometrist," or "Optician." One sign read, "Our Optical Department, A. P. Tartar." Other signs in and about the place tended to indicate that Tartar was the owner of the entire establishment. Money received for optical goods sold, and the sale slips on which were printed the words "Optical Department," were turned over to Mr. Tartar's cashier. But one set of books was kept. In these all accounts of both the optical department and jewelry business were kept. Smithers, while employed at the place, from time to time gave out advertising matter consisting of a chemically treated antiseptic cloth for cleaning lenses, which bore the printed legend, "Compliments of our Optical Department, A. P. Tartar, Jewelers and Mfg. Opticians." After the injury to Smithers, a card announcing the removal of the business to a new location bore the name "A. P. Tartar, Jeweler, Silversmith and Manufacturing Optician and official railroad watch inspector. . . . " This card also bore the following: "Dr. R. E. Walters Optometrist & Optician Office with A. P. Tartar, 107 West Ninth Street, Los Angeles."

In opposition to the claim of the applicant, A. P. Tartar, the petitioner, testified that he disposed of the optical business theretofore carried on in connection with his jewelry store to Dr. Walters on the 25th of September, 1920, nearly one year before Smithers was employed. The reason he assigned for making the sale was that he had much business to attend to in the jewelry department, and, not being a registered optometrist, he had been previously told by the state board of optometry that it would be necessary for

him to dispose of the optical business. In September, 1920, Dr. Walters was in the employ of Mr. Tartar on a salary of $45 per week. On the date mentioned, Tartar and Dr. Walters, according to the testimony of both of them, signed a contract in writing, which was produced in evidence, whereby Dr. Walters purchased all the fixtures, furniture, optical goods, and goodwill of the optical department for and in consideration of $12,000, payable in the form of a promissory note for that amount, due one month later. It was mutually agreed that Dr. Walters should secure the payment of the note by a chattel mortgage on the furniture and fixtures located in the storeroom. Mr. Tartar agreed to pay all indebtedness then existing against the optical department, and stipulated that he would execute a bill of sale covering the property upon full payment of the note. Dr. Walters agreed to pay $75 a month as rent, including "light, water, space, and everything." At this time Dr. Walters had little or no funds, the arrangement entered into being that the profits of the optical department, after deducting expenses and a reasonable amount for the living expenses of Dr. Walters, should apply in liquidation of the note until the full purchase price was paid. Petitioner relies upon the testimony of Dr. Walters, which strongly corroborates everything Mr. Tartar testified to. Both witnesses asserted that immediately following the purported transfer Dr. Walters assumed full control of the optical department and all business in connection therewith. There were introduced in evidence monthly returns for excise tax purposes required by the United States internal revenue regulations of the business done in the optical department after the alleged transfer of ownership. These were all made out in the name of and were sworn to by Dr. R. E. Walters as owner. He also appeared to have paid the required amount of tax. It is also in evidence that after Smithers went to work his wages were paid to him by checks signed by Dr. Walters. One set of books, in which the accounts of the jewelry store and the optical department were entered, was introduced in evidence. The method of bookkeeping employed was far from being satisfactory. About all that can be said of it is that it served to segregate the account of sales in the jewelry store from the business done in the optical department, in response to

the governmental requirements in that respect. No change in the method of bookkeeping appears to have been made after the purported sale, other than a notation of the sale to Dr. Walters, which appears on one of the pages in the midst of the accounts. It does not satisfactorily appear when that entry was made. From time to time, Dr. Walters, instead of drawing a regular salary, as he had been accustomed to do before the sale, withdrew amounts sufficient for his living expenses, and it is claimed he paid bills incurred in running the business. A recapitulation of accounts, which was before the Commission, tended to show that on November 21, 1921, after making deductions of amounts drawn by Dr. Walters and bills paid, he was entitled to a credit arising from the profits of the business amounting to $2,627.74 on the purchase price of the optical department. No notation on the note or elsewhere was introduced in evidence showing that he had actually been credited with any amount for that purpose. The defendants before the Commission were unable to show that Dr. Walters had paid the monthly rental, said to have been agreed upon for the optical department, and, in fact, it was admitted that he had not been charged therefor.

Only one copy of the agreement of sale was in existence. That was kept by Tartar in the safe in the store, where, it was contended, Dr. Walters had access to it. Neither the promissory note for $12,000 nor the chattel mortgage securing its payment was written or executed until after the injury to Smithers, when an antedated note, bearing the date of September 26, 1920, one day after the date of the contract of sale, was signed by Dr. Walters. The chattel mortgage, bearing the same date, containing a copy of the antedated note, was introduced in evidence and was shown to have been executed by Dr. Walters and Mr. Tartar, and sworn to and acknowledged on October 17, 1921, and recorded the following day, more than a month after the accident. There is confusion in the record as to whether or not an inventory of what was actually in the optical department was taken at the time of the alleged sale. None was produced. At the hearing it was shown that fixtures, furniture, stock, and supplies worth only about $3,000 were regarded as being in the property agreed to be sold for the sum of $12,000. There was brought here in the record of the

proceedings before the Commission a large number of exhibits, consisting of checks drawn by Dr. Walters and by A. P. Tartar, a list of cash tags from the prescription department of an optical company for goods sold to Dr. Walters, and various receipts purported to have been given by Dr. Walters in connection with the business. There were also included a list of credit memorandums, a list of cash tags and miscellaneous papers. These were introduced for the purpose of corroborating the contention that Dr. Walters conducted the business after the alleged transfer. They do not have that effect, for it appears that after the purported sale the method followed was that Tartar, by himself or by his bookkeeper, drew checks payable to Dr. Walters for everything he withdrew from the business for his own support and for the bills due. These checks seem to have been deposited in the bank, and checks by Dr. Walters drawn against the account thus created for the wages of the employees and other expenses incurred in the optical department. Many of these checks, and all of the cash tags and the receipts, bore date after the accident to Smithers.

Explanations were made, principally by the petitioner Tartar, of the various transactions we have noted, which are relied upon by the respondent to negative the fact of a *bona fide* sale of the optical department. For instance, Tartar testified that it was necessary for him to be satisfied as to the character and honesty of employees working in the optical department because of the valuable nature of the jewelry stock kept in the other part of the store. The continuation of the use of Tartar's name in connection with the matter distributed at the store and announcing the removal to the new location, he testified, was for the purpose of "advertising." He saw no need of exacting the note and security provided by the contract of sale for the reason that the business would not be transferred until fully paid for. The note and mortgage were only executed after the injury because Smithers was "threatening to make trouble."

Here we have a very considerable number of inferences, all tending to sustain the finding of the Commission, contradicted by the positive testimony of two witnesses who were directly interested in the outcome of the proceeding. They were both attempting to prove that the applicant was employed, not by Tartar, who, according to the Commission,

was financially responsible, but by Dr. Walters, who, the
Commission asserts, was financially irresponsible. Their tes-
timony is wholly uncorroborated by the testimony of any
disinterested witness, although it appears there were at
least two persons who would have been in position to
corroborate the circumstances relating to the purported
transfer of the optical department. There are numerous
facts and circumstances, to which we have referred, which
reasonably tend to support the inference relied upon by the
Commission that the claimed contract of sale from Tartar
to Walters may have been a sham. The motive for such
pretense is not, we think, supplied by the desire to escape
liability in the present proceeding, as claimed by the re-
spondent, but may have been actuated by the direction of
the state board of optometry requiring Tartar to dispose of
his optical business. The optical business was conducted after
the purported sale in precisely the same manner as it had been
prior thereto, except that wages and the expenses of the busi-
ness, instead of being paid directly by Tartar, were paid by
Tartar to Walters and by the latter disbursed. In fact it may
be safely inferred that the business was under the actual or
potential direction of petitioner as before. Apparently Dr.
Walters drew from the business whatever money he desired.
But an examination of the accounts and of the exhibits
would indicate that he actually appropriated to himself no
more than would have amounted to a reasonable salary.
There seems to be justification also for the inference that the
segregation of the accounts upon the books, which showed
no change in the method of entry after the purported sale,
was required by the excise tax regulations, regardless of who
owned the business. Under all these circumstances it can-
not be said that the Commission was required to accept the
testimony of petitioner and Dr. Walters. If it was not so
required, then it would appear that it was justified in find-
ing upon the circumstantial evidence, and the inferences
arising therefrom, that the purported sale from petitioner to
Dr. Walters was a sham and a pretense. From this it would
follow that the finding that petitioner was the real employer
of Smithers is supported by the evidence and that the award
should be sustained. "If the finding of fact is based upon
a reasonable inference, it is not within the power of this
court to set it aside any more than it is within its power

to set aside any other finding supported by sufficient legal evidence. For a finding of fact based upon reasonable inference drawn from facts proved with legal sufficiency is as much and as completely as is any other finding of fact a finding based upon good and sufficient evidence. It is the peculiar and exclusive province of trial court or trial jury in the first instance to make such finding of fact, and it is the especial right of every litigant to have all facts so determined by court or jury, this court sitting only to review the findings and being empowered to set them aside as matter of law only when not sustained by adequate evidence.'' (*Ryder* v. *Bamberger,* 172 Cal. 791, 799 [158 Pac. 753, 756].)

The award is affirmed.

Myers, J., Lennon, J., Seawell, J., Richards, J., *pro tem.,* Wilbur, C. J., and Lawlor, J., concurred.