[Civ. No. 5349. Second Appellate District, Division Two.—November 24, 1926.]

## T. F. SIMPSON, Petitioner, v. A. PAYNE, as County Auditor, etc., Respondent.

[1] CONSTITUTIONAL LAW — OFFICERS AND ATTACHES OF MUNICIPAL COURTS—FIXING OF SALARIES—POWER OF BOARD OF SUPERVISORS OF LOS ANGELES COUNTY — LEGISLATURE — STATUTORY CONSTRUC.TION.—The board of supervisors of Los Angeles County, under the freeholders' charter and section 7½ of article XI of the constitution, which provides that charters so adopted shall make provision "for the number of justices of the peace and constables for each township, or for the number of such judges and other officers of such inferior courts as may be provided in the constitution or general law, for the election or appointment of said officers, for the times at which and the terms for which said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, and if appointed, for the manner of their appointment," has not the power of fixing the salaries of the officers or attaches of municipal courts, but such power is retained by the legislature under section 1 of article VI of the constitution, as amended in 1924.

[2] ID. — FREEHOLDERS' CHARTER — GENERAL LAW — STATUTORY CONSTRUCTION.—Wherever the constitution authorizes the county to enact legislation upon a particular subject matter, under the provisions of a freeholders' charter, such legislation is exclusive and supersedes all acts of the legislature relative to the same subject matter inconsistent therewith; but the general law or act of the legislature applies where there has been no provision in the charter or legislation thereunder.

[3] ID.—LEGISLATIVE POWER—IN WHOM VESTED.—The entire legislative power of the state is vested in the people acting either by way of the initiative and referendum or through the legislature, except as expressly prohibited by the constitution of the state.

[4] ID.—POLITICAL SUBDIVISIONS—EXTENT OF LEGISLATIVE AUTHORITY. Political subdivisions of the state only have such legislative authority as may have been expressly conferred or delegated.

[5] ID.—MUNICIPAL COURTS—STATUS OF OFFICERS AND ATTACHES OF.— Inasmuch as municipal courts are not inferior courts within the

2. See 7 Cal. Jur. 419.
3. See 5 Cal. Jur. 666.

meaning and intent of section 7½ of article XI of the constitution, the attaches of that court are not officers of an inferior court within its meaning. Clerks and attaches of the municipal court are necessary adjuncts of that court.

(1) 11 **C. J.,** p. 864, n. 48.   (2) 15 **C. J.,** p. 420, n. 9 New.   (3) 12 **C. J.,** p. 745, n. 2.   (4) 15 **C. J.,** p. 419, n. 98.   (5) 11 **C. J.,** p. 849, n. 17 New; 15 **C. J.,** p. 482, n. 13 New.

PROCEEDING in Mandamus to compel County Auditor of Los Angeles County to issue warrant for payment of clerk of Municipal Court. Writ granted.

The facts are stated in the opinion of the court.

Hewitt, Ford & Crump for Petitioner.

Everett W. Mattoon, County Counsel, and R. C. Mc-Allaster, Deputy County Counsel, for Respondent.

THOMPSON, J.—The stipulated facts show that a municipal court was established in the city of Los Angeles on February 1, 1926; that the petitioner is a clerk in the criminal department of said municipal court, as provided in section 7 of "An act authorizing the establishment of Municipal Courts, prescribing their constitution, regulation, government, procedure and jurisdiction, and providing for the election and appointment of the judges, clerks and other attaches of such courts, their terms of office, qualifications and compensation, and for the selection of jurors therein," approved May 23, 1925 (Stats. 1925, p. 648); that the salary of the office held by petitioner is fixed, by section 7 of the act above mentioned, at the sum of $225 per month, but the board of supervisors of Los Angeles County, acting upon the theory that the salary fixed by the legislature was without authority so far as counties operating under freeholders' charters were concerned, fixed the salary of the office at $165 for the month of February, 1926, and $175 per month thereafter.

This proceeding is brought, then, for the difference between $165 for the month of February, as fixed by the board of supervisors, and $225 a month, as fixed by the legislature.

[1] The question presented is: Does the board of super-

visors of Los Angeles County, under the freeholders' charter and section 7½ of article XI of the constitution, which provides that charters so adopted shall make provision "for the number of justices of the peace and constables for each township, or for the number of such judges and other officers of such inferior courts as may be provided by the constitution or general law, for the election or appointment of said officers, for the times at which and the terms for which said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, and if appointed, for the manner of their appointment," give to the board the power of fixing the salaries of the officers or attaches of municipal courts, or does the legislature have that power under section 1 of article VI of the constitution of California, as amended in 1924? That section, as so amended, reads as follows: "The judicial power of the state shall be vested in the Senate, sitting as a court of impeachment, in a Supreme Court, District Courts of Appeal, Superior Courts, such municipal courts as may be established in any city or city and county, and such inferior courts as the legislature may establish in any incorporated city or town, township, county, or city and county." As amended, section 11 of article VI, after making provision for the cities in which municipal courts may be established and giving the legislature authority to determine the number of judges and providing for certain jurisdiction, states: "The legislature shall provide by general law for the constitution, regulation, government and procedure of municipal courts, and for the jurisdiction thereof except in the particulars otherwise specified in this section, and for the establishment of municipal courts in cities or cities and counties governed under charters framed and adopted under the authority of this constitution, and having the population hereinbefore in this section specified. Upon the taking effect of such general law, a municipal court may be established in any such city or city and county whenever the charter thereof or amendment to such charter shall provide that there shall be a municipal court therein, or whenever the assent of a majority of the qualified electors of such city or city and county, voting upon the question of the establishment of such municipal court, and expressed in such manner and

form as the legislature shall by general law prescribe, is given to the establishment thereof. The manner in which, the time at which, the term for which the judges, clerks and other attaches of municipal courts shall be elected or appointed, the number and qualifications of said judges and of the clerks and other attaches, except as such matters are otherwise provided in this article, shall be prescribed by the legislature. The compensation of the justices or judges of all courts of record, shall be fixed and the payment thereof prescribed by the legislature." By section 12 of article VI the municipal courts are made courts of record and section 18 of the same article provides that judges "of the municipal court shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected or appointed, and no justice or judge of a court of record shall practice law in any court of the state during his continuance in office."

On these constitutional provisions it is asserted that the board of supervisors have the right to fix the salaries of the attaches of the municipal court, for the following reasons: First, that county ordinances enacted pursuant to a freeholders' charter supersede any general law enacted by the legislature on the same subject; second, that section $7\frac{1}{2}$ of article XI of the constitution confers on the board of supervisors operating under a freeholders' charter, the exclusive authority to fix the salaries of judges and officers of all courts in the county except the superior court or police courts or courts established by city charters; third, that municipal courts are inferior courts within the meaning of subdivision 3 of section $7\frac{1}{2}$ of article XI of the constitution; fourth, that the amendment to section 11 of article VI of the constitution does not deny to the board of supervisors the right to fix the salaries of attaches of a municipal court, and fifth, that the petitioner, as clerk in a criminal department of the municipal court is an officer of an inferior court within the meaning of section $7\frac{1}{2}$ of article VI of the constitution.

In addition to asserting the unsoundness of the propositions advanced by respondent, the petitioner contends that the board of supervisors has no power to fix the salaries of clerks of the municipal court of Los Angeles City, be-

cause the provisions of the charter in that behalf are null and void in that they do not comply with the requirements of section 7½ of article XI of the constitution and also that the power to make provision for the salaries of the attaches of a municipal court was never conferred upon the county.

[2] We think it is conceded and established that wherever the constitution authorizes the county to enact legislation upon a particular subject matter, under the provisions of a freeholder's charter, such legislation is exclusive and supersedes all acts of the legislature relative to the same subject matter and inconsistent therewith. (*Graham* v. *Mayor etc. of Fresno,* 151 Cal. 465 [91 Pac. 147]; *Martin* v. *Election Commrs.,* 126 Cal. 404 [58 Pac. 932].) The general law, or act of the legislature applies, however, where there has been no provision in the charter or legislation thereunder. (*Fleming* v. *Hance,* 153 Cal. 162 [94 Pac. 620].) It would seem to us, therefore, that the first essential inquiry is as to the proper interpretation to be given to the amendment of the organic law of 1924. In so doing it is well to note that prior to the amendment of 1924 the judicial power of the state was disposed of and vested in the supreme court, district courts of appeal, superior courts, and such inferior courts as the legislature might establish in any incorporated city or town, township, county, or city and county, and that this was the case at the time section 7½ of article XI was adopted. In other words, the only authority that could be conferred upon the counties operating under freeholders' charters by section 7½ of article XI was referable to such inferior courts as the legislature might then establish. The fact that the language of section 7½ of article XI reads, "such inferior courts as may be provided by the constitution or general law," does not alter the situation, because the only inferior courts in mind or provided for by the constitution were those the legislature was authorized to create. And in arriving at the true intent it is well to note that prior to 1911 when section 7½ of article XI was added and section 1 of article VI was amended, justices of the peace were directly provided for in the constitution and distinguished from "such inferior courts as the legislature may establish." This amendment, however, did not abolish the justices'

courts theretofore established by the constitution. (*In re Woods*, 161 Cal. 238 [118 Pac. 792]; *People* v. *Creeks*, 170 Cal. 368 [149 Pac. 821].) In view of this fact it is as though the provision read "such inferior courts as may be provided" by general law under the constitutional provision therefor or those heretofore established by the constitution. It must be granted that the legislature had no authority to establish municipal courts with the jurisdiction and powers of the municipal courts, the establishment of which was provided for in the amendments of 1924 to the constitution. Perhaps it is not helpful to endeavor to classify the municipal court as an inferior court for the reason that inferior is such a relative term that it ranges all the way from next to omnipotence to next to nothing. It is of importance, however, to determine whether or not they are the kind of courts within the contemplation of section 7½ of article XI of the constitution. In addition to the fact that they could not possibly have been in the mind of the voters in 1911 when that section was adopted, it must also be remembered that the municipal courts are granted jurisdiction greatly in excess of that exercised by justices of the peace and police courts, or any inferior court which might have been created without constitutional amendment. We may well ask the question: Did the people of California and the legislature intend to surrender to the counties any portion of their authority relating to the establishment of courts for the purpose of exercising a jurisdiction with which the counties theretofore had no voice? We think they did not.

[3] At this juncture it seems proper to refer to an established principle of law that the entire legislative power of the state is vested in the people acting either by way of the initiative and referendum or through the legislature, except as expressly prohibited by the constitution of the state. (*Sheehan* v. *Scott*, 145 Cal. 684 [79 Pac. 350]; *Mendenhall* v. *Gray*, 167 Cal. 233 [139 Pac. 67]; *People* v. *Rinner*, 52 Cal. App. 747 [199 Pac. 1066]; *In re Madera Irr. Dist.*, 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675].)

[4] The converse of this proposition is also true, that political subdivisions of the state only have such legislative authority as may have been expressly conferred or delegated.

Unless we can find, therefore, that the authority has been conferred or delegated to the county, such authority must still be resident in the legislature. It appears, therefore, from the fact that municipal courts as provided for in the amendments of 1924 were not in mind at the time section 7½ of article XI was adopted, that the jurisdiction of the municipal courts as adopted is much more extensive in character than the inferior courts therein provided for, and from the further fact that the municipal courts were designed for the purpose of exercising a large share of the judicial power of the state as courts of record with judges devoting their entire time and attention to judicial functions, that we cannot say that any authority over their functions or management either with relation to its attaches or otherwise was delegated to counties operating under a freeholders' charter. We think the very fact that the voters of the cities were required to assent to their establishment is indicative of the true purpose and intent of the constitution, to wit, to "provide by general law for the constitution, regulation, government and procedure of municipal courts" unhampered by any other legislative action.

[5] Holding, as we do, that the municipal courts are not inferior courts within the meaning and intent of section 7½ of article XI of the constitution, the attaches of that court are not officers of an inferior court within its meaning. Nor must we confuse their status with that of the county clerk and his deputies, who are county officers. Clerks and attaches of the municipal court are necessary adjuncts of that court. (*Noel* v. *Lewis*, 35 Cal. App. 658 [170 Pac. 857]; *Martin* v. *Superior Court*, 194 Cal. 93 [227 Pac. 762].)

Under the view we entertain it is unnecessary to determine whether or not the provisions of the charter under which the ordinance is enacted are valid.

The peremptory writ will issue.

Works, P. J., and Craig, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 21, 1927.