[Civ. No. 5891. Second Appellate District, Division One.—May 22, 1928.]

EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and LORNE M. CAMPBELL, Respondents.

George H. Moore and Hubert Starr for Petitioner.

G. C. Faulkner for Respondents.

HOUSER, J.—The question presented for review herein is whether a person engaged to assist a professional golf instructor in the performance of his duties under a contract with a country club, as well as to assist such golf instructor in the conduct of a golf business located on the premises of the country club, the profits of which became the sole property of the golf instructor, was an employee of the country club and as such entitled to compensation for injuries received by him in the course of his employment, as provided by the Workmen's Compensation, Insurance and Safety Act. (Stats. 1917, p. 831.)

The facts appear to be that one Hunter, who was a professional golf instructor, had a contract with the Brentwood Country Club evidenced by the following communication:

"December 10, 1924.

"Mr. Willie I. Hunter,
    "Ambassador Gardens,
        "Los Angeles, Calif.

"Dear Sir:

"This will confirm the verbal arrangements made with you relative to your employment by this Club as Club Professional, for one year, beginning January 1st, 1925, at a salary of $100.00 per month; in addition to which you are to have the privilege of selling golf supplies of every kind including club making, repairing, cleaning and giving lessons. Your charge for lessons to members and their families, however, is to be limited to $4.00 per hour, or $2.00 per half hour, these being the rates already established by this Club.

"In consideration of our paying you a salary, you are to give us the benefit of your knowledge, experience and time, whenever called upon in connection with the upkeep of the Golf Course, or any changes or improvements to same.

"You are to employ a competent Assistant and Club Maker at your own expense, and one of you is to be on duty at all times so as to serve the members of this Club.

"Your acceptance of this letter will constitute an agreement between you and the Brentwood Country Club.

                "Yours very truly,
            "THE BRENTWOOD COUNTRY CLUB,
                    "(Signed) M. A. LEACH,
                "Chairman, Green Committee.

"Accepted:
    "W. I. HUNTER."

It further appears that under the provisions of such contract Hunter employed a man named Campbell to assist him in the performance of his duties as "club professional," as well as in the conduct of his "privilege to sell golf supplies," etc.; that in the course of business, a golf club was sold to one of the members of the Brentwood Country Club, which golf club later required some repairs or alterations, and that in performing said work the employee, Campbell, was injured. Following an application to the respondent Industrial Accident Commission for adjustment of claim for compensation, an award as for permanent disability was

made in favor of Campbell; and the insurer of the Brentwood Country Club has made application to this court to review the proceedings before the respondent Commission leading to the order of such award.

The objection made by petitioner to the award in effect is that the evidence before the respondent Commission was insufficient to sustain its finding of fact that Campbell "while employed as a club maker, . . . by the Brentwood Country Club, sustained injury in the course of and arising out of his employment."

It is conceded by petitioner that as to certain of the services rendered by Hunter to the Brentwood Country Club he was an employee of that association, as well as that when persons employed by Hunter were rendering such services in his stead they were engaged in the service of the Brentwood Country Club, and for any injuries which might be received in the course of or arising from such employment would be entitled to the benefit of the provisions of the Workmen's Compensation, Insurance and Safety Act. But the specific objection of petitioner is based upon the alleged fact that, in addition to the salary paid to Hunter, he was granted the distinct and unrelated "privilege" of conducting the business of selling, manufacturing, and repairing golf clubs and supplies on the grounds of the Brentwood Country Club, and that it was while Campbell was engaged in the service of Hunter in connection with the conduct of such business that he received the injury of which he complains.

On the hearing before the Commission of the application for adjustment of compensation, among other things, one of the directors of the Brentwood Country Club testified in substance that it was necessary, "in order to take care of the requirements of the members, that one or more men be on duty there at all times, to attend to their wants in the shop and about the place. The members have clubs that have to be cleaned and repaired and looked after; also have to be supplied with the necessary implements that go with the game of golf, in addition to which they, as a matter of course, instruct the people in the lessons." Furthermore, that Hunter personally employed Campbell and paid him his wages. " . . . rather than have the club itself state the wages of these different individuals (including

Campbell), why, that is left to the professional, and in fixing the professional's compensation that is taken into consideration, that he has to employ a certain number of men, and in turn it has to come out of the revenue being paid to the professional in his salary and his profits to be made in the handling of the shop, and the like of that, . . . ''; that if Campbell or any man whom Hunter might employ did not give satisfaction to the members of the Brentwood Country Club, Hunter would be compelled to get other suitable help; that while Hunter was the owner of the stock of golf goods and supplies kept on the premises of the Brentwood Country Club and derived the immediate profits from the sale of such merchandise, that fact was "taken into consideration with his main compensation that is being paid to Mr. Hunter for his services and that of his men"; and that if Hunter did not receive the revenue derived from such source, "he would have to be paid an annual amount of from ten to fifteen thousand dollars." The president of the Brentwood Country Club, in substance, testified to the same effect; and Hunter corroborated their testimony so far as concerned the "control and jurisdiction" which the Brentwood Country Club had over the assistants employed by him.

By section 8 (a) of the Workmen's Compensation, Insurance and Safety Act an employee is defined as anyone "under any appointment or contract of hire. . . . " And if he be employed "to render personal service to his employer, otherwise than in pursuit of an independent calling, and . . . in such service remains entirely under the control and direction of the latter, who is called his master," he is a servant or employee. (Sec. 2009, Civ. Code; *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807, 810 [159 Pac. 723]; *Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 122 [210 Pac. 820].) The presumption is that any person rendering service for another other than as an independent contractor, or as expressly excluded by the provisions of the Workmen's Compensation, Insurance and Safety Act, is an employee; and the burden of proof rests upon the person to whom the services were being rendered to establish the fact that the person rendering the services was acting in the capacity of an independent contractor. (Secs. 8 (c), (b), Workmen's Compensation, Insurance and

Safety Act, Stats. 1917, p. 831; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 580 [250 Pac. 570].)

The authorities indicate that ordinarily the determination of the question of whether an injured person was an employee or was an independent contractor rests with the trial tribunal. It is only either where no substantial evidence was introduced on the point, or where from the evidence the finding of fact was necessarily based on a conclusion of law, that an appellate court is authorized to interfere.

In the case of *Roman Catholic Archbishop of San Francisco* v. *Industrial Acc. Com.*, 194 Cal. 660, 667 [230 Pac. 1], one of the questions before the Commission was whether a man who had been engaged at a fixed wage per hour to do a job of reshingling a building was an employee or was an independent contractor. Touching the point with reference to the conclusiveness of the finding of the Industrial Accident Commission in the matter, in part, the court said:

" 'Whether a workman is an employee within the Workmen's Compensation Act or an independent contractor is a question of fact upon which the judgment of the Industrial Commission is conclusive where the facts are in dispute, and becomes a question of law only when but one inference can reasonably be drawn from the facts.' (*Federal Mining & Smelting Co.* v. *Thomas*, 99 Okl. 4 [225 Pac. 967].) It was said in *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 Pac. 754], 'It is the rule that where from the evidence, two opposing inferences may be drawn, that inference which is accepted by the Commission must be sustained if there is evidence in the record to support it and if it is a reasonable inference to be drawn from that evidence. (*Eastman* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17]; *Polar Ice etc. Co.* v. *Mulray*, 67 Ind. App. 270 [119 N. E. 149].)' (See, also, *Tartar* v. *Industrial Acc. Com.*, 191 Cal. 703 [218 Pac. 39]; *Employers Liability Assur. Corp.* v. *Industrial Acc. Com.*, 182 Cal. 612 [187 Pac. 42].)"

In the case of *Hillen* v. *Industrial Accident Commission*, 199 Cal. 577 [250 Pac. 570], it appeared that Hillen was a builder; that one Downing, who was a shingler by trade, was engaged by Hillen at the rate of $1.25 per thousand shingles to place the shingles upon certain houses being built by Hillen. For the purpose of "rushing" on several differ-

ent jobs, Downing procured other workmen to assist him. When each of the several jobs was completed, Downing collected compensation from Hillen in accordance with the specified rate and thereafter paid himself, as well as any extra workmen whom he had employed. During his employment, Downing was injured and thereupon, in an application presented by him to the Industrial Accident Commission for adjustment of compensation, the question arose as to whether he was an employee or an independent contractor. In considering the point, the court in part said that one of the best tests to determine whether the relation existing between the parties was that of independent contractor or that of employer and employee was the right on the part of the employer to direct the details—to control—to interfere—in the conduct of the work; and finally, the legal right, without liability to the employer, to terminate the relationship or to discharge the employee. But so far as concerns the instant proceeding, the important point decided in the Hillen case is that the decision by the Industrial Accident Commission as to what relationship existed between the parties was binding on an appellate court. In treating that particular matter, the opinion contains the following language: " . . . Whether or not the relation of employer and employee existed in this case, under the oral contract entered into, is a question of mixed law and fact, to be proved like any other question. The finding of the Commission, in effect, that the relation existed between Hillen and Downing is binding on this court. (*Pacific Gas & Elec. Co.* v. *Industrial Accident Com.*, 180 Cal. 497, 499 [181 Pac. 788].) Unless there is such an entire absence of evidence in the record as to render the finding unreasonable, or in excess of the powers of the Commission, the court is not empowered to set it aside. (*Eastman Co.* v. *Industrial Accident Com.*, 186 Cal. 587, 598 [200 Pac. 17].) The award of the Commission may be annulled only if there is no substantial evidence in support of its findings. (*Press Pub. Co.* v. *Industrial Accident Com.*, 190 Cal. 114, 124 [210 Pac. 820].)"

In the case of *Montezuma Mountain Ranch School* v. *Industrial Acc. Com.*, 201 Cal. 603 [258 Pac. 84], the salient facts were that a man who owned a wood-sawing outfit was employed by the manager of a school district to saw certain wood. An oral contract was made whereby a stipulated

sum per hour was to be paid not only to the owner of the wood-sawing outfit, but as well to certain of his employees. The manager of the school district reserved the right to terminate the work at will; also "the right of placing more men at work on the job than was necessary to complete the (ordinary) crew complement of three men." In the course of the employment a son of the owner of the wood-sawing outfit, who was one of the men working on the job, was injured and he sought from, and was awarded by, the Industrial Accident Commission compensation under the provisions of the Workmen's Compensation, Insurance and Safety Act. In a proceeding to review the findings and award of the Commission in the matter, it was held that "the burden of proving that claimant was an employee of an independent contractor and not a compensable employee was upon petitioners. This burden they did not fully overcome in the view of the Commission, and we are not convinced that the award stands wholly unsupported by proof."

In the case of *New York Indemnity Co.* v. *Industrial Accident Com.*, 80 Cal. App. 713 [252 Pac. 775], it was held that the evidence was sufficient to support the finding by the Industrial Accident Commission to the effect that a fellow-employee, under whom the injured employee performed his work, was a foreman of his employer and not an independent subcontractor, where both the injured employee and the foreman received their compensation as wages, and where the employer who contracted on the cost-plus basis retained the right to discharge the injured employee at any time, notwithstanding the injured employee received his instructions and wages directly from the foreman and the foreman furnished the material and charged the employer for the material, labor, and one dollar per day extra for every man under him.

While from the ordinary legal standpoint it may be that in some respects the evidence to which reference has been had herein was not of the most satisfactory character for the purpose of establishing the question of whether Campbell, the man employed by Hunter, was an employee of the Brentwood Country Club, it should be remembered that in hearings before the Industrial Accident Commission the statute expressly provides that neither such Commission nor its referees "shall be bound by the common law or statutory

rules of evidence and procedure, . . . nor shall any order, award, rule or regulation be invalidated because of the admission into the record, and use as proof of any fact in dispute, of any evidence not admissible under the said common law or statutory rules of evidence and procedure." (Stats. 1917, pp. 831, 871, sec. 60 [a].) See, also, *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 180 Cal. 497 [181 Pac. 788]; *Western Indemnity Co.* v. *Industrial Acc. Com.*, 174 Cal. 315 [163 Pac. 60]; *Employers L. A. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 Pac. 273].

Considering the evidence adduced, together with the inferences deducible therefrom, it becomes clear that the determination of the status of Campbell, the man employed by Hunter, involved "a question of mixed law and fact." The authorities to which attention has been directed, and especially the case of *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 580 [250 Pac. 570], announce the rule with clarity and positiveness that such a situation must be met and proved like any other question of fact. With such an issue before the trial tribunal, where supported by substantial evidence, and in the absence of lack of jurisdiction, or of unreasonableness in its conclusions, the finding by such tribunal is conclusive on an appellate court. As the evidence appears sufficient to justify the findings and award, and as neither the jurisdiction of the Commission nor the reasonableness of its conclusion is the subject of attack, it follows that the award should be affirmed. It is so ordered.

Conrey, P. J., and York, J., concurred.