[Civ. No. 8147. Second Appellate District, Division One.—April 22, 1932.]

COUNTY OF LOS ANGELES (a Body Corporate and Politic), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, WILLIAM T. CALDERWOOD et al., Respondents.

[Civ. No. 8148. Second Appellate District, Division One.—April 22, 1932.]

CITY OF LOS ANGELES (a Municipal Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, WILLIAM T. CALDERWOOD et al., Respondents.

Everett W. Mattoon, County Counsel, and Fred M. Cross, Deputy County Counsel, for Petitioner County.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Willis L. Grafton, Deputy City Attorney, for Petitioner City.

A. I. Townsend for Respondents.

TAPPAAN, J., *pro tem.*—This matter is presented here on two writs of review wherein the County of Los Angeles and the City of Los Angeles are the respective petitioners, seeking a review of an award made by respondent Industrial Accident Commission in favor of respondents William K. Calderwood and Emma K. Calderwood, and charging petitioners jointly with the payment of the indemnity awarded.

The facts, in so far as they are material here, are briefly as follows: Perman C. Calderwood, the son of respondents William T. and Emma K. Calderwood, was killed at about the hour of 7 o'clock P. M., December 22, 1930, by a stab wound inflicted by a person who had robbed a malt store in the City of Los Angeles. Calderwood, at the time of his death, was employed as a deputy marshal of the municipal court established in the City of Los Angeles. His duties as deputy marshal for more than one year before his death had been the serving of processes and warrants delivered to him for service by the marshal's office. On the day of his death

it would appear that he had left the marshal's office at about 5 o'clock in the afternoon, and was on his way to his home when killed.

There are presented here two questions: First, did the injury for which indemnity was awarded arise out of and in the course of his employment; and second, who was the employer of deceased at the time of his death? Both of these questions involve definitions of the term "employment".

The finding made by the Commission on this subject reads as follows: "Perman Carlton Calderwood, age 35, while employed on December 22, 1930, as a deputy marshal in the municipal court jointly by the County of Los Angeles, a body corporate and politic, and City of Los Angeles, a municipal corporation, sustained injury occurring in the course of and arising out of his employment when while apprehending one then engaged in a felonious assault and robbery upon a citizen, he was stabbed, proximately resulting in death on said date."

"The findings of the Commission in such matters stands upon the same footing as the finding of a judge, or the verdict of a jury, and is not to be set aside if there is any substantial evidence upon which it can rest. (*Pigeon's Case*, 216 Mass. 51, 52 [Ann. Cas. 1915A, 737, 102 N. E. 932].) . . . A review of the findings in such cases may be had, however, on the theory that the Commission has no jurisdiction to make a finding where there is no evidence to support it. (*Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591 [203 Pac. 112]; *Southern Pacific Co.* v. *Industrial Acc. Com.*, 177 Cal. 378, 380 [170 Pac. 822].)" (*Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459, 466 [209 Pac. 31, 34].) A very clear and concise statement of the first question presented here is made in the case of *Enterprise Foundry Co.* v. *Industrial Acc. Com.*, 206 Cal. 562 [275 Pac. 432]. At page 563 the following language is used: "That the injury arose or grew out of deceased's employment may be conceded; whether at the time of the injury he was, in fact, 'performing service . . . incidental to' and was 'acting within the course of his employment' (Workmen's Compensation Act, Deering's General Laws, Act 4749, p. 1714, sec. 6), is the real point at issue. It is essential to the power to make an award, and the burden is upon an applicant for

compensation to show not only that the injury arose out of but also that it occurred within the course of the employee's employment."

■ There is ample and uncontroverted evidence to establish the following facts: That the deceased at the time of his death was regularly employed as a deputy marshal of the municipal court established in the City of Los Angeles; that he was stabbed to death while attempting to arrest a person engaged in the robbery of a citizen; that the work to which he was assigned as deputy marshal at the time of his death consisted of the service of processes and warrants given to him for service by the marshal; and that at the time of his death he had completed the usual work of the day and was on his way home. The evidence of just what occurred at the time of the death of deceased is meager in extent, and uncertain and unsatisfactory as to many material details. It consists in large part of the transcript of the testimony given before the coroner at the inquest held on the body of the deceased. Evidence of this character is competent in proceedings of this special nature. (Sec. 60 (a), Workmen's Compensation Act, chap. 586, Laws of 1917; *Employers' L. A. Corp.* v. *Industrial Acc. Com.*, 92 Cal. App. 119, 126 [267 Pac. 922].) There were no eye-witnesses who saw the blow struck, nor did the deceased make any statement before his death. The only direct evidence as to the circumstances surrounding the death of deceased is found in the testimony given by two witnesses at the coroner's inquest. One of these witnesses, who was at the time in an automobile in the street and near the scene, testified in part as follows: "First thing I knew I thought they had slugged this deputy or officer . . . Calderwood . . . I saw him scuffling around." The other witness, a police officer, who arrived on the scene some time after the death of Calderwood, testified: "Calderwood just happened to be at the scene . . . he thought it just a fight and tried to separate them . . . one ran and he took charge of the other."

There is no evidence that the deceased was engaged, at the time of his death, in the performance of any work assigned to him by the marshal nor that he had been so engaged at any time since he left the marshal's office to go home. There is no evidence that deceased was at the time of his

death engaged in the performance of any of the duties for which he was specifically employed as deputy marshal nor is there any direct evidence that at that time he was assuming to act as a police officer. The basic reason for the enactment of the Workmen's Compensation Act has been clearly defined by our courts. In the case of *Employers' L. A. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432, 436 [177 Pac. 273, 274], in commenting upon that subject, our Supreme Court used the following language: "Under that law we are fixing a liability which it is the policy of the law to place upon the business or industry, in which the employee is engaged, by placing the responsibility for indemnity upon the employer." But the policy of the law, as thus broadly stated, is subject to the limitation that "the burden is upon an applicant for compensation to show not only that the injury arose out of but also that it occurred within the course of the employee's employment". (*Enterprise Foundry Co.* v. *Industrial Acc. Com., supra.*)

Respondents contend, and with such contention we agree, that deceased was, as a deputy marshal of the municipal court, charged at all times with the performance of the duties of a "peace officer". In the enumeration of peace officers found in section 817 of the Penal Code is that of "marshal". The duties of marshals are fixed by section 25a of the Municipal Court Act (Stats. 1929, p. 1744) as those of sheriff. Section 4157 of the Political Code defines the duties of sheriff, and among such duties are to preserve peace, prevent and suppress any affrays and breaches of the peace. That an affray had taken place prior to the death of deceased is a conceded fact. There is some evidence to the effect that the deceased took charge of one of the robbers at a time before his death. The evidence as to what deceased was doing at the time of his death is circumstantial and involves a question of fact. From the evidence presented, together with the inferences deducible therefrom, it cannot be said that there is no evidence sufficient to support the finding that the injury occurred in the course of deceased's employment. (*Pruitt* v. *Industrial Acc. Com., supra; Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 580 [250 Pac. 570].) This is especially true when consideration is given to the fact that the Commission, in making

the award, is not bound by conventional rules as to evidence. (*Employers' L. A. Corp.* v. *Industrial Acc. Com., supra.*)

The remaining question presented here involves the question as to who was the employer of the deceased and is charged with the duty of paying the award made by the Commission. Both the County of Los Angeles and the City of Los Angeles deny the employment and liability for indemnity, and suggest in their briefs that the relationship and liability rests upon the other. The Commission adopted the precedent established by Solomon, and held both liable for the indemnity. Both the City of Los Angeles and the County of Los Angeles have filed petitions asking a review of the award and, by stipulation, the proceedings upon both petitions were consolidated and submitted to be considered as one proceeding before this court.

The Workmen's Compensation Act in section 8 (a) (Stats. 1917, p. 835) defines an employee as: "Every person in the service of an employer, as defined by section seven hereof, under any appointment or contract of hire, apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, and all elected and appointed paid public officers. . . . " Although the act enjoins upon the courts a liberal construction of its terms, the courts may not ignore the common law and other definitions in determining who are, and who are not, employees, but may make use of such sources of information to decide what the legislature intended by the language made use of. (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, 813 [159 Pac. 721].)

In the case of *Simpson* v. *Payne,* 79 Cal. App. 780 [251 Pac. 324], where the board of supervisors of Los Angeles County sought to fix the salary to be paid to an attaché of the municipal court established in the City of Los Angeles, it was held that the board was without power to fix the salary of such court attaché and pointed out that the status of clerks and other attachés of the municipal court must not be confused with that of the county clerk and his deputies, who are county officers. This case appears to be the only case reported involving the status of attachés of the municipal court.

There is ample authority, aside from the case just cited, to sustain the contention of the County of Los Angeles

that it was not the employer of deceased. For a clear statement of this phase of the matter under consideration, it is necessary briefly to refer to acts under which the municipal court was created. In 1924 an amendment to article VI, section 11, of the Constitution made provision for the establishment of municipal courts, and delegated to the legislature the power to prescribe, by general law, the manner in which, the time at which, the term for which, the judges, clerks and other attachés, except where such matters are otherwise provided for in the amendment to the Constitution, shall be elected or appointed. The power was also granted to fix the salary of such officers and to provide for its payment. Pursuant to the powers granted by this constitutional amendment, the legislature enacted the Municipal Court Act (Stats. 1925, p. 648). The charter of the City of Los Angeles, in section 429, made provision for the establishment of a municipal court in the City of Los Angeles, and the city council of the City of Los Angeles, by ordinance, created and established such court within the city. The creation of the court was optional with the City of Los Angeles, and, in its creation and establishment the County of Los Angeles played no part, except that it re-formed the township lines of certain existing townships to exclude city territory therefrom. The Municipal Court Act, section 22, provided that the salaries of the judges, clerks and marshals of the municipal court shall be paid by the county, and that the county shall provide the court with quarters and necessary supplies. Section 1463 of the Penal Code makes provision for partial reimbursement of the county for such expense out of the fines collected in the municipal court. In the case of *Simpson* v. *Payne, supra,* it was held, as hereinbefore noted, that the county had no control over the salaries of attachés of the municipal court. The contention of the city that, from the fact that the legislature has placed upon the county the burden of the payment of the salaries of the attachés of the municipal court, the county must be deemed the employer of the deceased, is without justification. Although in most cases where the contract of employment exists between individuals, the source of payment as a rule is one of the *indicia* of the existence of the relationship, in cases involving governmental functions, this does not always seem to be true. In the case of the salary of a judge of the

superior court, unquestionably a state officer, part of his salary is paid by the county.

The relationship which must exist as the basis of the awarding of indemnity under the Workmen's Compensation Act is one that is always at least analogous to that of master and servant. (*Gabel* v. *Industrial Acc. Com.*, 83 Cal. App. 122 [256 Pac. 564]; Civ. Code, secs. 1965 and 2009.)

In *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407, 417 [156 Pac. 491, 495], the court quotes Wood on Master and Servant, section 317, with approval, and as follows: "The real test by which to determine whether a person is acting as a servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged for disobedience or misconduct." It is obvious that, where one has never exerted or had the right to exert, the slightest degree of control over one injured, he is not answerable under an award for indemnity. (*Pruitt* v. *Industrial Acc. Com., supra.*)

Applying the principles just referred to, it is clear that the deceased was not an employee of the County of Los Angeles. As has been pointed out, the county played no part in the establishment of the municipal court. The county made no contract with the deceased. Under section 18 of the Municipal Court Act, *supra,* the marshal of the municipal court appoints the deputy marshals. The marshal is appointed by the judges of the municipal court, who are elected by the voters of the City of Los Angeles. The section of the Municipal Court Act just mentioned provides that the marshal, in the appointment of deputies, shall take their name from an eligibility list furnished him by the civil service commission of the City of Los Angeles.

The right to discharge is of importance in this regard. "Perhaps no single circumstance is more conclusive to show the relationship of employee than the right to end the service whenever he sees fit to do so." (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 120 [210 Pac. 820, 823].)

Section 19 of the Municipal Court Act, *supra,* provides that the deputy marshal shall hold office during good behavior, and that he may be discharged by the appointing officer, subject to the benefit of any rules affecting such

discharge that may be provided under the civil service provisions of the city charter. The right to employ, control and discharge the deceased was a function devolving upon the City of Los Angeles, and it must be held answerable for the indemnity awarded. Although the constitutional amendment providing for the establishment of the municipal court granted plenary power to the legislature to prescribe the functions and duties of the court and its officers, and to change them from time to time, there is nothing in the record here to show that the legislature has attempted to exercise that control in the case of the deceased. This power, dormant in the state, has been delegated to the City of Los Angeles, and assumed and exercised by it. The deceased was injured while under the control and direction of the City of Los Angeles, and in the performance of a duty which devolved upon him as a result of his employment by the City of Los Angeles.

The award of the Commission, in so far as it charges the County of Los Angeles, is annulled; as to the City of Los Angeles, it is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1932, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 21, 1932.

Shenk, J., Curtis, J., and Preston, J., dissented.