[L. A. No. 7477. In Bank.—July 5, 1923.]

## THE FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION OF CALIFORNIA et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — EMPLOYER AND EMPLOYEE—INDEPENDENT CONTRACTORS. — The accepted interpretation of the terms "employee" and "independent contractor" under the Workmen's Compensation Act has not been altered by the addition of section 21, article XX, of the constitution, nor by the amendment of that section in 1918.

[2] ID. — INDEPENDENT CONTRACTOR — DEFINITION. — Under the Workmen's Compensation Act the definition of an independent contractor is, one who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only, and not as to the means by which such result is accomplished.

[3] ID.—CONSTRUCTION OF CONTRACT.—Where a party carrying on the business of transporting freight by automobiles between certain points entered into a contract with another, engaging his exclusive services for a specified period to carry freight, the latter to furnish his own truck and trailer, keep them in repair, pay all operating expenses, including the driving, and to make one trip each twenty-four hours unless detained by breakdowns, compensation to be not less than a certain amount per hundred pounds of freight carried, with a minimum monthly amount, the first party (the owner of the business) to provide the loads of freight to be shipped, furnish warehouses and assume all responsibility of the billing and collecting of charges, for which he was to be paid by the truck owner a certain per cent of his gross receipts, the first party to assume and perform all services in connection with the loading, unloading, distributing, and assembling of the loads, for which he was to have the use of the truck, and was to be paid a monthly amount therefor by the truck owner, the contract being transferable to a third party, subject to approval by the first party, as the truck owner by his contract was under the control of the first party as to the result of his work only, and not as to the means by which such result was to be accomplished, he was an independent contractor.

1. Independent contractors, subcontractors, and their employees within meaning of workmen's compensation acts, notes, Ann. Cas. 1918B, 708; L. R. A. 1916A, 118, 247; L. R. A. 1917D, 148; L. R. A. 1918F, 206.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission.  Order annulled.

The facts are stated in the opinion of the court.

Jennings & Belcher for Petitioners.

A. E. Graupner and Warren H. Pillsbury for Respondents.

W. A. Sloane and Luce, Sloane & Lee, *Amici Curiae.*

MYERS, J.—This is a proceeding in *certiorari* to review an award of compensation for the death of one Guy V. Edwards, who was killed on November 3, 1921, by the overturning of a motor-truck which he was driving while in the course of his occupation.  The only question presented upon this review is whether decedent was an employee of the petitioner Haydis, or whether he was an independent contractor.

Haydis carried on the business of transporting freight by motor-trucks between Los Angeles and San Diego.  In September, 1921, decedent bought a truck and on October 22, 1921, entered into a written contract with Haydis to carry freight for him between San Diego and Los Angeles.  By its terms Haydis, the party of the first part, "hereby engages and employs the exclusive services of the party of the second part [decedent] together with and to operate and run" the motor-truck and trailer therein described for the purpose of transporting freight for the party of the first part for a specified period of fourteen months.  Decedent agreed to furnish the truck and trailer, keep them in repair, pay all operating expenses, including the driving, and to make one trip between Los Angeles and San Diego, or between San Diego and Los Angeles, each twenty-four hours, unless detained by breakdowns, wrecks, or other causes that could not reasonably be guarded against.  He was to receive not less than forty cents per hundred pounds for freight carried, Haydis guaranteeing him an average of not less than $700 a month.  At the end of each month a balance between the receipts and the guaranteed compensation was to be struck.  Haydis was to provide the loads of freight shipped, to furnish warehouses and assume all responsibility

of the billing and collecting of charges, for which he was to be paid by decedent fifteen per cent of his gross receipts. At the option of decedent (which he exercised) Haydis was to assume and perform all services in connection with the loading, unloading, distributing, and assembling of the loads, and was to have the use of the truck for that purpose, and was to be paid $50 per month by decedent for those services. It was provided that when "trip prices" were received, the weight of the load should have no bearing on the amount decedent was to receive for it, that payment for the "services rendered herein" by decedent should be made between the 1st and 10th of each month, and that Haydis should furnish decedent with duplicate trip sheets showing the amount of all shipments. The contract was transferable to a third party, subject to the approval of Haydis, and provided that it was "understood at this time that there are no other agreements, either written or verbal, between the parties hereto." It was agreed upon the hearing that the services rendered were governed exclusively by the contract, and it appeared in evidence that the decedent had operated exclusively thereunder from the time of the making of the contract to the time of his death, and that he had not been engaged in the trucking business except during the few weeks intervening between the purchase of this truck and the making of the contract.

The distinction between an employee and an independent contractor under the Workmen's Compensation Act has been considered by this court on numerous occasions. **[1]** It is settled that the accepted interpretation of those terms has not been altered by the addition of section 21, article XX, of the constitution, nor by the amendment of that section in 1918. (*Pacific G. & E. Co.* v. *Industrial Acc. Com.,* 180 Cal. 497 [181 Pac. 788]; *Flickenger* v. *Industrial Acc. Com.,* 181 Cal. 425 [19 A. L. R. 1150, 184 Pac. 851]; *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.,* 187 Cal. 615, 618 [203 Pac. 95]). **[2]** The Workmen's Compensation Act defines an independent contractor as one "who renders service, other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only, and not as to the means by which such result is accomplished." (Stats. 1917, p. 831.) The legislature in including the phrase "other

than manual labor'' in this definition attempted to place an unconstitutional restriction upon the accepted and settled meaning of the terms, and the definition is therefore to be considered for the purposes hereof as if it read: ''One who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only, and not as to the means by which such result is accomplished.'' (*Flickenger* v. *Industrial Acc. Com., supra.*)

In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion, and other circumstances persuasive to the opposite conclusion. But an analysis of the cases makes it plain that the determinative factor is usually found in the solution of the question: Who has the power of control, not as to the result of the work only, but as to the means and method by which such result is accomplished? In *Luckie* v. *Diamond Coal Co.*, 41 Cal. App., at page 480 [183 Pac. 183], after an extensive review of the cases, the court said:

''The accepted doctrine is that where the essential object of the employment is the performance of work, the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the job shall be done; or, in other words, not only what shall be done, but how it shall be done. (Labatt on Master and Servant, sec. 64; *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 Pac. 721].) 'The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for.' (*Green* v. *Soule,* 145 Cal. 96, 99 [78 Pac. 337, 339].) He is deemed to be the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details. The legal test for the determination of the question is stated by Thompson as follows: 'An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' (1 Thompson on Negligence, secs. 621, 622.)'' (See, also, *Barton* v. *Studebaker*

*Corp.*, 46 Cal. App. 707, 717 [189 Pac. 1025], and cases there cited; *Flickenger* v. *Industrial Acc. Com., supra; Pryor* v. *Industrial Acc. Com.*, 186 Cal. 169 [198 Pac. 1045].)

Respondents contend that the instant case comes within the rules applied in *Eng-Skell Co.* v. *Industrial Acc. Com.*, 44 Cal. App. 210 [186 Pac. 163], and *Press Publishing Co.* v. *Industrial Acc. Com.*, and *General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 Pac. 820], in each of which cases the applicant was held to be an employee and not an independent contractor. The former of those cases is radically different from the case at bar. In that case the injured man was employed, together with the use of his truck, not to make certain trips designated in the contract, nor to transport certain specified freight between specified terminals for a compensation dependent upon the results accomplished by him, as in the instant case, but was employed to furnish the services of himself and his truck each day from 8 A. M. until 6 P. M. and to do within those hours whatever he should be directed by his employer to do. Under his contract if he presented himself and his truck for work from 8 until 6 he was entitled to his pay, regardless of whether he was given any work to do on that day or not. In the instant case it was immaterial whether the decedent worked five hours or fifteen hours during the twenty-four. If he got through with a load of freight he was entitled to be paid. If he did not get through with it from one terminal to the other he was entitled to no pay, even though he may have been working at that job the whole twenty-four hours. The determinative factor in the Eng-Skell case was ''that in the performance of such service and the use of said truck Rogers [the applicant] was at all times under the control and direction of the Eng-Skell Company.'' The two cases of Press Publishing Co. and General Acc. etc. Corp. more nearly approach in their facts the case at bar. In each of those cases the applicant was employed and paid not for the rendition of services during specified hours, but rather for the accomplishment of certain specified results. The decision of this court in each of those cases holding that the applicant was an employee rather than an independent contractor was grounded upon the circumstance that it was an admitted fact in each case that the employer had the power to discharge him at any time, and therefore had the

power to control him, not only with respect to the results to be accomplished, but also with respect to the manner and method of their accomplishment. This court said with respect to one of those employers: "This power of the employer to terminate the employment at any time is a strong circumstance tending to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by an independent contractor. Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so." With respect to the other employer it said: "The circumstances attending the hiring of Benefiel [the applicant] warrant the inference that he was subject to the direction and control of the Press Publishing Company in the performance of his work. The most significant fact in this regard and one which points towards the relation of employee rather than to the status of an independent contractor is the fact that Benefiel was hired on the same terms as the other carriers, and the Press Publishing Company had the right to exercise the same direction and control over Benefiel as it did over the other carrier boys, concededly employees. . . . One of the means of ascertaining whether or not this right to control exists is the determination of whether or not if instructions were given they would have to be obeyed." Applying this test to the case at bar, let us suppose that Haydis had said to the decedent, "You must start each trip not later than 7 A. M. and must not drive at a greater rate than ten miles per hour during any part of the trip." If the decedent had been an employee it would have been his plain duty to obey those instructions. But it is clear that under his contract he was under no obligation so to do. Or suppose Haydis had said, "You must start not earlier than 10 A. M. and must complete your trip within eight hours thereafter." If decedent had been an employee it would have been his duty to obey this instruction. But such was not his duty under the contract herein. If Haydis had directed decedent to follow a certain route in making these trips and decedent had preferred a different route, can anyone doubt that under their contract the right and power to select the route was vested in decedent? Under the contract decedent was responsible to Haydis only as to the result of the work to be

accomplished, namely, the transportation of one load of freight between the two terminals specified during each twenty-four hours. The contract herein was for the definite term of fourteen months and no right was reserved therein to Haydis to terminate it prior to that time for any cause whatsoever. It has been suggested that if the decedent had violated his contract Haydis could then have terminated it, from which it is argued that Haydis had the power of coercion and control over decedent, but it is equally true that if Haydis had violated his part of the contract decedent would have had an equal right to terminate it, and it could just as well be argued, so far as this aspect of the contract is concerned, that decedent had the power of control over Haydis.

The circumstance that under the contract decedent was to render nondelegable personal services may be persuasive, but it is in no sense conclusive or determinative. Contracts for the rendition of nondelegable personal services are of common occurrence which do not constitute the contractor an employee. For example, the ordinary contracts between attorney and client. The same may be said of the use of the phrase "engages and employs."

In Shearman and Redfield on Negligence it is said: "The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work and not as to the means by which it is accomplished" (6th ed., sec. 164). Respondents emphasize the phrase "in the course of an independent occupation" and argue that the decedent was not pursuing an independent occupation because he was not doing hauling for anyone else. and was not permitted so to do under the provisions of his contract for the term thereof. This is a *non sequitur.* The question whether or not one is pursuing an independent occupation does not depend upon whether he is serving one person or many persons, but whether in the pursuit of his occupation he is acting upon his own behalf or as the servant of another. This is pointed out by the authors last quoted from in the same section: "If he never serves more than one person there is usually a presumption that he has no independent occupation; but this presumption is not conclusive. A single large railroad company, for example,

might find work enough for a contractor to occupy his whole lifetime, yet leave him to work in perfect independence, accepting the results of his labor without ever interfering with his choice of the mode and instruments of working. On the other hand, one may have many employers within a short space of time, yet be a mere servant to each of them in turn. . . . The one indispensable element of his character as an independent contractor is that he must have contracted to do a specified work and have the right to control the mode and manner of doing it." Decedent had been working with this truck a little over a month before making this contract.

The question of the burden of proof is wholly immaterial herein for the reason that the facts are all in evidence and the evidence is without conflict. It was stipulated at the hearing that the services rendered were governed exclusively by the written contract which is in evidence. The question whether the decedent was an employee or an independent contractor is thus a pure question of law to be resolved from the terms of the contract itself, considered in the light of the situation of the parties. But if we go further and consider what was done by them in carrying it out, there is no evidence that Haydis ever exercised any ` control over the truck while it was being operated by decedent. Mrs. Edwards testified that it was understood that decedent should not carry anyone else upon the truck. But she immediately explained this statement by saying: "I mean— as I understood it no insurance would be good in any way if there was anyone outside, or anyone else driving." There is no evidence that Haydis ever demanded, or even suggested, that decedent should not carry anyone else upon the truck. Neither is there any evidence that Haydis ever made any demand or request or suggestion with respect to the mode of operation of the truck by decedent.

By the contract herein Haydis also agreed to render services in providing the loads, freight, and shipping, in the billing and collecting of charges, and in the loading, unloading, distributing, and assembling of the loads, for which he was to receive a specified recompense from decedent. It might, therefore, be argued with almost equal justice that under this contract Haydis was the employee and decedent was the employer. [3] But taking the contract herein by its four corners, and considering it in the light of the situa-

tion of the parties, and in the light of what was done by each of them in its performance, our conclusion is that the decedent was "under the control of his principal as to the result of his work only, and not as to the means by which such result is accomplished," and was, therefore, an independent contractor.

The award is annulled.

Kerrigan, J., Waste, J., and Wilbur, C. J., concurred.

LAWLOR, J., Dissenting.—Upon the hearing before the Industrial Accident Commission, respondent Mrs. Edwards, decedent's widow, testified that from the time he made the contract decedent operated exclusively under it; that he did not solicit or convey goods of any sort from any terminal other than that of Haydis and the Truck Owners and Shippers, Inc.; that the money for the freight decedent hauled was collected through Haydis' office and that from time to time decedent was paid money by Haydis; that decedent did not have anyone drive the truck for him after he entered into the agreement; that he drove to Los Angeles and back alone; that she did not remember of any representative of Haydis ever going with him; that "It was understood that he was not to carry anyone else, no one else was to go with him. I mean—as I understood it no insurance would be good in any way if there was anyone outside, or anyone else driving. That is one reason he never took me to Los Angeles"; that before decedent bought the truck he was not in the trucking business, but worked for a dairy. It was agreed upon the hearing that the services rendered were governed exclusively by the contract.

Petitioners emphasize the circumstances that decedent owned his own truck, took care of it himself, and paid for its upkeep; that Haydis exercised no control over the manner or method of hauling the freight; that decedent traveled alone and was his own master in operating the truck. Three cases are cited and especially relied upon as determining that under the facts shown decedent was an independent contractor. In *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721], one Stevens was engaged in "Teaming and Grading" and furnished teams, wagons, and drivers for hauling material, at the rate of six dollars a

day for a team, wagon, and driver. His agreement with the hirer in question did not cover any definite period of time, nor designate the number of loads to be hauled, but it was agreed each wagon should work eight hours a day. The hirer's foreman gave directions in the matter of what materials should be hauled. Stevens drove one wagon himself and the money for all the drivers was paid to him, he in turn paying the others. It was held that as the contract was not for Stevens' personal services, but for teams, wagons, and drivers, and as the hirer only had a limited control over the work, Stevens was an independent contractor.

In *Flickenger* v. *Industrial Acc. Com.*, 181 Cal. 425 [19 A. L. R. 1150, 184 Pac. 851], the decedent for whose death compensation was claimed was engaged in the "truck business," taking calls from the public at large. He was engaged to haul a quantity of hay for Flickenger. There was no definite agreement as to the time within which the work should be done or as to the price. The decedent suited his own convenience as to the manner and time of loading his truck, being expected merely to do a full day's work each day. He was held to be an independent contractor. In *Hall* v. *Industrial Acc. Com.*, 57 Cal. App. 78 [206 Pac. 1014], the petitioner had a dairy in Lankershim and contracted with the injured party, Ramgren, who was engaged in the trucking business, to carry a quantity of milk to Los Angeles each day at a specified rate. This service did not prevent Ramgren from using any time not occupied in transporting the milk to do hauling for other persons. He paid for the upkeep of the truck, and if anything happened to it he was required to secure other means of transportation. The petitioner had no control over the route taken or the manner of operation of the truck. The court held Ramgren to be an independent contractor.

As stated in the main opinion, respondents contend the case presents a closer analogy to *Eng-Skell Co.* v. *Industrial Acc. Com.*, 44 Cal. App. 210 [186 Pac. 163], and the late cases of *Press Publishing Co.* v. *Industrial Acc. Com.* and *General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 Pac. 820], wherein a single opinion was rendered. In the former case, in which a petition for a hearing in this court was denied, the Eng-Skell Company entered into an agreement in writing with one Rogers, who owned a

truck, whereby the truck and driver were to be supplied to petitioner for the purposes of its business daily between the hours of 8 A. M. and 6 P. M., for a period of six months, for the sum of $1,050 for the entire term, payable in semi-monthly amounts of $87.50. Rogers was held to be an employee upon the grounds that the real arrangement between the parties was such that Rogers was himself to be the driver and was to give his personal services to the Eng-Skell Company; that in the course of such personal service he was not only to be the driver of the truck, but was to attend to all of the details incident to the delivery of the goods; that the service precluded the pursuit of any independent calling by him, and that in the use of the truck he was at all times under the control of the Eng-Skell Company. The relationship was held not to be affected by his use of his own automobile and his payment of its upkeep.

In the two latter cases the injured party was jointly engaged by a creamery and a newspaper, combining the work of going to a ranch in the country after cream and delivering papers along the way. The court held in both instances he was an employee, the control over his movements being found to exist potentially in the facts that in each case his duties were required to be finished by a certain time and that each hirer had the right to discharge him at any time. It was further held that he did not become an independent contractor because he owned and paid the upkeep of the motorcycle he used in the performance of his duties, nor because he incidentally carried packages for persons along his route, which in no way interfered with his regular work and was entirely subordinate to it.

This case is distinguishable in certain respects from the cases cited by petitioners. In each of those cases the injured party was engaged in an independent hauling business, and the work he was doing when injured was done in the course of that occupation. Although all his time might temporarily be devoted to one job, he was allowed to engage in other enterprises, and his service was not to be rendered exclusively to one party. In *Western Indemnity Co.* v. *Pillsbury, supra,* the agreement was not even one for personal services. Here decedent conducted no general trucking business. He secured his truck in September and on the following October 2d entered into the con-

tract, having before that time worked for a dairy. Under the contract he was to render nondelegable personal services exclusively to Haydis, being thus precluded from following an independent calling. The time during which the contract should extend was limited and a definite sum was guaranteed decedent, which was equivalent to no more than a promise of wages. Except for the provision that Haydis was to perform certain duties, decedent was required to attend to all the incidents of the transportation of the goods. In these particulars this case is almost identical with *Eng-Skell Co.* v. *Industrial Acc. Com., supra.*

The fact that the parties provided for the contingency of an assignment of the contract by decedent might be claimed to indicate that they did not intend to establish the relation of employer and employee. But when the nature of the provision is considered, it is apparent it does not have that effect, for it is merely an agreement for an assignment with the consent of the hirer, such as would be implied by law even in the absence of any clause to that effect. It is well settled that when an agent assigns a contract without the consent of the principal the assignee takes merely an opportunity to offer himself to the principal as a substitute for the assignor (*Boehm* v. *Spreckels,* 183 Cal. 239 [191 Pac. 5]), but also that the burden of any contract may be assigned with the assent of the party entitled to the benefit. (Civ. Code, sec. 1457; *Cutting Packing Co.* v. *Packers' Exchange,* 86 Cal. 574 [21 Am. St. Rep. 63, 10 L. R. A. 369, 25 Pac. 52].) I do not think the inclusion of this clause is determinative of the nature of the engagement.

The question of Haydis' control over decedent's conduct of the work remains to be considered. In *Press Publishing Co.* v. *Industrial Acc. Com., supra,* it was declared: "In the absence of any express terms affirming or negating the power of control and direction, its existence must be determined from the reasonable inferences to be drawn from all the circumstances surrounding and attending the making and execution of the contract considered in conjunction with the nature of the contract and the duties ordinarily to be performed thereunder." As already pointed out, the employers in that case were held to have control of the employee because the work was required to be finished by a definite time and because they retained the power to dis-

charge him at any time. In *Eng-Skell Co.* v. *Industrial Acc. Com., supra,* it was found the employer did actually control the movements of the employee. In this case Haydis engaged and *employed* decedent's services exclusively. The word "employ" has a definite legal meaning, and one of the elements involved in an employment is the employer's control over the employee. While it is not "the name parties may give to their contract which determines its character" (*Mebius & Drescher Co.* v. *Mills,* 150 Cal. 229 [88 Pac. 917]), "legal terms are to be given their legal meaning unless obviously used in a different sense" (*Weinreich Estate Co.* v. *A. J. Johnston Co.,* 28 Cal. App. 144 [151 Pac. 667]).

As the contract in question contained no express reference to the subject of control, it might well be held that by the very use of the term "employs" it was intended Haydis should have control over the movements of decedent and that decedent was in fact to be his employee. Such a holding would settle the entire matter. But I am of the opinion it also appears from other facts that sufficient control was reserved to Haydis to constitute him an employer by the contract. Decedent was required to make a trip one way each twenty-four hours. He could not substitute another driver or another truck and thus could not use his own discretion as to the time or means of transportation. He had no discretion concerning the loading of the truck or the shipping; Haydis was to provide for this without regard to decedent. It was also provided that trip prices might be received, necessarily at Haydis' discretion, for he was to furnish the loads, and that in such an event the weight of the load should not affect the amount received by decedent.

The only matters over which Haydis apparently did not retain express control were as to what roads decedent should travel upon and in what manner he should perform the acts required in operating the truck. What directions would a driver need more than were given to this one? That some control was actually exercised over the truck while it was being operated by decedent is shown by the testimony of respondent, Mrs. Edwards, that because no insurance would be good if anyone rode with decedent, it was understood he should not carry anyone else upon the

truck. The control actually having been exercised, it is evident it was vested in Haydis, and the other elements of an employment being present, I am satisfied the finding that decedent was his employee is supported by the evidence and that the award should be affirmed.

Lennon, J., concurred.

SEAWELL, J., Dissenting.—I agree with the conclusion reached by the minority opinion. The question whether decedent, Edwards, was an employee of petitioner, Haydis, or an independent contractor, as held by the majority opinion, is a question not free from doubt. Elements tending to constitute either relationship are somewhat intermingled in the transaction. The burden of proof rested upon petitioners to prove affirmatively that decedent was an independent contractor. Section 19 (d), Workmen's Compensation, Insurance and Safety Act, provides as follows:

"The burden of proof lies upon the party holding the affirmative of the issue. The following are affirmative defenses, and the burden of proof shall rest upon the employer to establish them:

"(1) That an injured person claiming to be an employee is an independent contractor or otherwise excluded from the protection of this act, where there is proof that such injured person was at the time of his injury actually performing service for the alleged employer."

There being room for substantial doubt as to whether petitioners have sufficiently overcome the burden cast upon them by a showing that decedent was an independent contractor within the purview and meaning of the Workmen's Compensation, Insurance and Safety Act the award, in my judgment, should be affirmed.

Rehearing denied.

Wilbur, C. J., Lawlor, J., and Lennon, J., dissenting.