[Civ. No. 5572.  Second Appellate District, Division Two.—January 19, 1927.]

## NEW YORK INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and RICHARD B. LENNON et al., Respondents.

[1] Workmen's Compensation Act—Employer and Employee—Independent Contractor—Right of Control—Evidence.—In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion, and other circumstances persuasive to the other conclusion; but one of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control, which involves the right of either to terminate the relation without liability, and it is not the fact of interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.

[2] Id. — Evidence — Award — Certiorari. — In this proceeding in *certiorari* by an insurance carrier to review an order of the Industrial Accident Commission awarding compensation, the evidence was such as to justify the Commission in finding that the applicant was the employee of the insured, and that the person under whom the applicant worked was but an employee of the insured and not an independent contractor.

---

(1) 39 C. J., p. 1316, n. 7, p. 1317, n. 8.   (2) Workmen's Compensation Acts, C. J., p. 50, n. 60, p. 115, n. 37.

1.  See 13 Cal. Jur. 1019.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Petition denied.

The facts are stated in the opinion of the court.

George L. Greer and S. L. Carpenter for Petitioner.

G. C. Faulkner for Respondents.

CONREY, P. J.—Petitioner, the insurance carrier for one O. W. Dorman, has applied for a writ of *certiorari* to review a decision of the Industrial Accident Commission awarding compensation to Richard B. Lennon for injuries received arising out of and in the course of his employment as painter on a building being constructed by Dorman as contractor. Petitioner claims that J. P. Jessel was an independent subcontractor operating under contract with Dorman, and that Lennon was an employee of Jessel and not of Dorman. The sole question is whether or not Lennon while employed as painter on the house in question was an employee of Dorman or was an employee of Jessel and of Jessel only.

The evidence relied upon by petitioner is set forth in his petition. Petitioner maintains that the evidence does not justify the finding that Lennon was in the employ of Dorman, and further contends that the evidence does show without substantial conflict that he was not in the employ of Dorman at the time he sustained the injuries, but was then an employee of Jessel, whose relation to Dorman then was that of an independent contractor; and that in awarding compensation to Lennon against petitioner, the Commission acted without and in excess of its powers.

[1] "In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion, and other circumstances persuasive to the opposite conclusion. But an analysis of the cases makes it plain that the determinative factor is usually found in the solution of the question: Who has the power of control, not as to the result of the work only, but as to the means and method by which such result is accomplished?" (*Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, 407 [43

A. L. R. 1304, 216 Pac. 578].) "A workman who is paid wages by the piece or quantity comes within the provisions of the Workmen's Compensation Act the same as one who is paid by the day. Wages may be measured by time, by the piece, or by any other standard. (*McKinstry* v. *Guy Coal Co.,* 116 Kan. 192 [225 Pac. 743], and note in 38 A. L. R. 839.) One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. (*Tuttle* v. *Emburg-Martin Lumber Co.,* 192 Mich. 385, 399 [Ann. Cas. 1918C, 664, 158 N. W. 875.) It is not a question of interference, or noninterference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work, but a question of the right to act, as distinguished from the act itself or the failure to act. (*Carleton* v. *Foundry etc. Co.,* 199 Mich. 148, 152 [19 A. L. R. 1141, 165 N. W 816].) . . . Coincident with the right of control is the right of either the employer or the employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right of control. (*Industrial Com.* v. *Bonfils,* 78 Colo. 306 [241 Pac. 735].) The decision of the District Court of Appeal in *Helmuth* v. *Industrial Acc. Com.,* 59 Cal. App. 160 [210 Pac. 428], correctly applies the rule in this state." (*Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577 [250 Pac. 570, 571].)

[2] An examination of the evidence as contained in the petition demonstrates that there is evidence sufficient to have warranted the Commission in finding that Jessel was merely the foreman of Dorman; that both Jessel and Lennon received their compensation as wages; that the wages of Lennon, although received by him from the hands of Jessel, were merely advanced by Jessel, and in fact came from Dorman; and that Dorman retained the right to discharge Lennon at any time and therefore retained the right of control of the manner in which the work should be done. The facts that Lennon usually received his instructions and his wages from Jessel, and that Jessel did not ordinarily collect from Dorman on any job until its completion, are not

circumstances conclusively proving that Jessel was an independent contractor. Dorman made his contracts with the owners under what is commonly known as the cost-plus basis, that is, his contract price was the cost of construction plus a percentage. Jessel was allowed wages for his own work, and in addition was allowed one dollar per day for each man employed under Jessel on the job. This allowance on each man "was for brushes and for profits." As Dorman said, "The deal with Jessel was that he should get one dollar per day on each man and his own wages." As to control of the employees, Dorman further said: "Mr. Jessel did not ordinarily consult me about laying off painters and taking them on. If I saw a man on the job and didn't like him I would tell him to lay him off same as I would with any subcontractor. I have asked him to put a man on. I am boss of Mr. Jessel when he works for me, and everybody else. I am not boss of everybody under him, they take orders from him. If I saw a man doing something objectionable I would enter protest with Mr. Jessel. My understanding with Mr. Jessel was that he ran my painting. He furnished my material and charged me up for the material and labor and he was allowed one dollar a day per man extra. Of course he got his own wages all the time because he was running different jobs. At the end of the job he turned in so much for material, so much for labor, no items. . . . I never checked up on his books. I know he was perfectly honest. I could have discontinued relations with Mr. Jessel in the middle of a job if I felt dissatisfied. I can fire anybody off the job at any time."

Under the foregoing evidence we are satisfied that the Commission was authorized to find that Dorman was the employer of Lennon.

The petition for writ is denied.

Houser, J., and York, J., concurred.

An application by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 17, 1927.