[Civ. No. 5736. Second Appellate District, Division One.—December 5, 1927.]

OCEAN ACCIDENT & GUARANTEE CORPORATION (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ANNA M. C. FLORCKEN, Respondents.

R. P. Wisecarver and Redman & Alexander for Petitioner.

G. C. Faulkner for Respondents.

HOUSER, J.—As a brief outline, the facts appear to be that one Florcken was employed by a society known as the Turn Verein Germania to make collections of monthly dues from its members, for which service Florcken was to be paid a commission of ten per cent on the total amount received by the society from such source, whether or not personally collected by him. While acting in the course of and arising out of his employment Florcken sustained injuries which subsequently resulted in his death. On application by his widow to the respondent Commission to adjust compensation al-

leged to be due to her under the provisions of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831), an award was made, and it is by way of writ of review that petitioner herein seeks to have such award annulled.

It is the contention of petitioner herein that the relationship which existed between Florcken and the society was such that in a legal sense Florcken was not an employee of the society, but that he was an independent contractor, and as such neither he nor his dependent was entitled to any benefits arising from the provisions of the so-called Workmen's Compensation Act.

By the terms of section 8a of the act in question an employee includes every person in the service of an employer under any appointment or contract of hire, and the presumption (sec. 8b) is that "any person rendering service for another other than as an independent contractor" is an employee.

In order to determine the contractual relationship which existed between the parties, in addition to adjudicated cases in which the relationship of master and servant and that of owner and independent contractor have been discussed and decided, it becomes necessary to consider further details regarding the situation of the parties herein one toward the other. At the hearing before the respondent Commission it was shown in evidence that following the resignation of a former collector of dues for the society, on resolution of the board of directors thereof Florcken had been elected to the position, to hold same during the pleasure of the board; that in connection with his work he was bonded as a collector and was furnished by the society with stationery, books, receipts, and, with the exception of postage, with all other supplies necessary in the proper discharge of his duties; that during the two years of his engagement with the society, although he had no other employment, no restrictions, as such, were placed upon him as to the time when, or the manner in which, his work should be performed, and that as a matter of fact he kept his books at his home, worked such hours in the daytime as he chose, and generally operated from his home. However, although not particularly specified as a part of his duty, he was expected to attend meetings of the members of the society and thereat

make such collections as were possible. His work was performed in the name of the society and all collections were retained by him until his monthly accounting was made, at which time he delivered to the society the full amount collected by him and thereafter ten per cent of such sum was returned to him in compensation for his services. The account between the society and Florcken was kept on the books of the society under the heading "Commission and Dues." Another account kept by the society was entitled "Labor and Compensation," under which head appeared the moneys paid to salaried officers and general help. The evidence showed that the trustees of the society supervised Florcken's work, and that at any time they might dismiss him by action of the board of trustees in the event that his work was unsatisfactory.

One of the witnesses, in response to questions propounded to him at the hearing, testified as follows: "Q. Mr. Haeckel, is it your understanding that the board of directors might have at any time given Mr. Florcken directions as to how he should change his method of doing business, or that he should do it in a different manner, and that he would be obliged to do so? A. Yes; it was my understanding that by bringing it up at a board of directors' meeting they could ask him about collections that year; it had to come on the meeting nights or the class nights, and only on the days while the members were there. Q. Did you ever know of that actually being done to any collector? A. Yes; I have heard it suggested that upon the collector's complaint that the members were not mailing in the dues, it was suggested that he come on those meeting nights when the members were there and then he could approach them. Q. What I mean is, in the event the collector was not satisfactorily getting the dues in, was there ever anything said to him about it; was he called on the carpet, in other words, about it? A. Yes, sir. Q. Do you know of any such instance? A. Yes, sir; I have heard the trustees do it. Q. Mr. Haeckel, is it not true that as a matter of fact, at the request of the trustees of the board, Mr. Florcken attended meetings about four nights every week, in order that those collections might be gone after to their satisfaction? A. It was suggested, yes. . . . Q. Then he actually attended on Tuesdays, Wednesdays, Thursdays and Fridays? A. Yes, I have seen

him there the four nights out of the week. . . . Q. Mr. Haeckel, these meetings that you have just referred to, that the deceased attended, they were attended practically so that he could make his collections? A. That was his only purpose, except probably on Wednesday night, to which class he personally belonged; he was class leader and would take part in the exercises. Q. As a matter of when he should attend and how often attend, that was left pretty much to his own judgment, was it not? A. It was. He could miss a night and catch up the next time."

In the case of *Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, 407 [43 A. L. R. 1304, 216 Pac. 578], where the authorities are cited, it is said:

"In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion, and other circumstances persuasive to the opposite conclusion. But an analysis of the cases makes it plain that the determinative factor is usually found in the solution of the question: Who has the power of control, not as to the result of the work only, but as to the means and method by which such result is accomplished? . . . "

In the case of *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570], a man had been engaged to lay shingles at a fixed price per thousand. At times he employed other men to help in the work. The evidence showed that the general contractor had instructed his superintendent to "let it (the shingling) out on a contract." In the course of the opinion it is said:

" . . . Whether or not the relation of employer and employee existed in this case, under the oral contract entered into, is a question of mixed law and fact, to be proved like any other question. The finding of the commission, in effect, that the relationship existed between Hillen and Downing is binding on this court. (*Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 180 Cal. 497, 499 [181 Pac. 788].) Unless there is such an entire absence of evidence in the record as to render the finding unreasonable, or in excess of the powers of the commission, the court is not empowered to set it aside. (*Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 598 [200 Pac. 17].) The award of the commission may be annulled only if there is no substantial evidence in

support of its findings. (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 124 [210 Pac. 820].)'' See, also, *New York Indemnity Co.* v. *Industrial Acc. Com.*, 80 Cal. App. 713 [252 Pac. 775]; *Montezuma Mountain Ranch School* v. *Industrial Acc. Com.*, 201 Cal. 603 [258 Pac. 84].

The rule is announced in the case of *Archbishop* v. *Industrial Acc. Com.*, 194 Cal. 660, 667 [230 Pac. 1], as follows:

'' 'Whether a workman is an employee within the Workmen's Compensation Act or an independent contractor is a question of fact upon which the judgment of the Industrial Commission is conclusive where the facts are in dispute, and becomes a question of law only when but one inference can reasonably be drawn from the facts.' (*Federal Mining & Smelting Co.* v. *Thomas*, 99 Okl. 24 [225 Pac. 967].) It was said in *Western Pacific R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 Pac. 754] : 'It is the rule that where from the evidence two opposing inferences may be drawn, that inference which is accepted by the Commission must be sustained if there is evidence in the record to support it and if it is a reasonable inference to be drawn from that evidence. (*Eastman* v. *Industrial Acc. Com.*, 186 Cal. 587, 589 [200 Pac. 17]; *Polar Ice etc. Co.* v. *Mulray*, 67 Ind. App. 270 [119 N. E. 149].)' (See, also, *Tartar* v. *Industrial Acc. Com.*, 191 Cal. 703 [218 Pac. 39]; *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 182 Cal. 612 [187 Pac. 42].)''

Considering that the record in the instant case contains substantial evidence tending to establish the ultimate facts that Florcken might have been discharged from his position at any time, and that the manner in which he operated was subject to the direction of the board of trustees of the society, it is clear that as between Florcken and the society, the ''determinative factor'' of power of control lay with the latter, not only as to the result proposed to be obtained, but as well to the means and method by which such result was to be accomplished. (*Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, 407 [43 A. L. R. 1304, 216 Pac. 578].) Under the general rule as announced in the Hillen case, 199 Cal. 577 [250 Pac. 570], and particularly in the Archbishop case, 194 Cal. 660, 667 [230 Pac. 1], in effect that unless there is an entire absence of evidence the

finding by the Commission must be upheld, we are constrained to rule that the award herein should be affirmed. It is so ordered.

Conrey, P. J., and York, J., concurred.