[Civ. No. 6600. Third Dist.—May 13, 1941.]

MADELINE E. GUTH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

George L. Popert and Granucci & Polhemus for Petitioner.

Everett A. Corten and Edmond D. Leonard for Respondents.

THE COURT.—Petitioner seeks to annul an order of respondent commission denying death benefits to her and her minor child.

For a number of years George L. Guth, husband of petitioner, was in the employ of respondent Rubber Company at Sacramento. Twenty-three years prior to his death, and continuing thereafter, he was a stockroom and order clerk. During this time, and in this capacity, he was admittedly an employee of the company. In addition to this relationship with the company, there grew up another which came into existence about eight years after the first. There is evidence in the record which would justify the commission in basing their order upon the following facts which describe the second relationship mentioned. During the first eight years all deliveries of the company were made by common carrier, independent parcel delivery service, and independent drayage firms. In 1924, the deceased approached Mr. Smith, manager of the company at Sacramento, suggesting that as he needed additional income to support his family and educate his children, he would like to buy a truck, and in his off-hours make some of the deliveries then being made by the independent firms above referred to, upon the same basis that they were making these deliveries. Smith agreed to this, and in order to help him get started, personally guaranteed the payments on the first truck the deceased bought.

From 1924 onward the deceased owned and maintained one or more trucks. With them he made deliveries of the company's merchandise to customers and retail agents in and about the vicinity of Sacramento, in his off-hours; before work in the morning, at noon, at night, on Sundays and on holidays. Sometimes he drove these trucks; at other times his wife or his wife and his son made the deliveries. He carried and paid for his own insurance, though, as is customary where a contract delivery service makes deliveries for a company,

the Tire Company was named as an additional assured. He had his own licenses from the Motor Vehicle Department and his own license and radial carrier's permit from the Railroad Commission. He paid his own license fees and his own taxes. He furnished the detailed statements to the Railroad Commission required of all licensed radial carriers. He was free to haul for anyone else he saw fit, and could have had someone else drive his trucks in hauling for the Tire Company or anyone else; in fact, the record shows his wife frequently did drive the trucks without him in making deliveries. He was not required under the contract thus to render any *personal* service, but could have anyone he saw fit drive the trucks. He was not restricted to delivering only for the Goodyear Company; he was free to deliver, and have his trucks, with someone else driving, deliver for whomever he saw fit.

The deliveries he and his wife made for the company were, as noted, deliveries other independent delivery services had previously made. Instead of the deliveries being turned over to other carriers when the deceased had selected the ordered goods, prepared them for delivery, and billed them out, the deceased or his wife merely stepped in under the contract he had with the company and made the deliveries on the same basis as the other independent carriers made them. Deceased was paid under his contract on exactly the same basis as other independent carriers; that is, on a weight and distance basis as determined by the competitive rates established for independent contract carriers in the Sacramento area. The goods were turned over to him or his wife in the same manner as to any other carrier. They were billed out in the same way and delivered in the same manner. He turned in his charge sheets in the same manner as the other delivery services, the company kept the same records on his deliveries as on the others, and he was paid on the same basis and in the same manner. These payments were kept on the company's books as service charges and not as wages, and were not reported as wages to the compensation carrier or to governmental agencies. Pursuant to the above arrangement the decedent was making a delivery of some of the company's merchandise at approximately 7:15 P. M. on the evening of December 29, 1939, when he met with an accident from which he received injuries which directly and immediately caused his death.

■ The sole question before this court is whether or not there is *any substantial* evidence to support the finding of the commission that at the time the decedent received the injuries which caused his death he was not a servant of the company, but on the contrary, was an independent contractor. If there is any evidence from which the commission could reasonably conclude or infer that the deceased was not an employee of the company, it is our duty to affirm the order. In 27 Cal. Jur., page 285, section 22, it is stated:

"Ordinarily, unless but one inference can reasonably be drawn from the facts, the question whether a workman is an employee within the act is one of fact for the Commission, upon which its finding is conclusive."

The position of petitioner is thus expressed in her Points and Authorities:

"Such proof as was adduced at the hearing, that is to say, that the decedent owned his own truck and paid for the operation of the same, that he was paid on a piece basis, and that he was operating under a license granted by the Railroad Commission, are positively *immaterial* factors *where the evidence clearly shows the right to control and direct the work of the decedent on the part of the Company.* Such has been the ruling of the appellate courts of this State on many occasions."

Respondents' contention is as follows:

"When it is realized that there were two separate and distinct relationships here; that one called for the personal services of the deceased and the other merely for a result to be accomplished, either by him or someone he might select, it is apparent that as to the second, he was at the time of injury merely a truck owner delivering goods on his own time, by his own means, without control by the shipper, for a contract price on which he could either make or lose; in short that he was an independent contractor."

■ The rule applicable to a situation of this kind is stated in *Fidelity & C. Co.* v. *Industrial Acc. Com.,* 191 Cal. 404–407 [216 Pac. 578, 43 A. L. R. 1304], as follows:

"In determining in any given case whether a person was an employee or an independent contractor there are usually present various circumstances which are persuasive to one conclusion, and other circumstances persuasive to the opposite conclusion. But an analysis of the cases makes it plain that

the determinative factor is usually found in the solution of the question: Who has the power of control, not as to the result of the work only, but as to the means and method by which such result is accomplished? In *Luckie* v. *Diamond Coal Co.*, 41 Cal. App. [468] at page 480 (183 Pac. [178] 183), after an extensive review of the cases, the court said: 'The accepted doctrine is that where the essential object of the employment is the performance of work, the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the job shall be done; or, in other words, not only what shall be done, but how it shall be done. (Labatt on Master and Servant, Sec. 64; *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721].) 'The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for.' (*Green* v. *Soule*, 145 Cal. 96, 99 [78 Pac. 337, 339].)''

In *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 581 [250 Pac. 570], it is said:

''One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.''

The testimony in the case is spread over some four hundred pages of transcript. Under the rules of this court, it was incumbent upon petitioner to quote the evidence upon which she relies. This was done. We have examined such portion of the evidence with particular care, and we do not believe, as a matter of law, that the commission was bound to make an order for death benefits. Such evidence consists of a portion of the testimony of the manager of the Rubber Company. The latter testified that the deceased had the duty of preparing and shipping emergency orders after closing time. This is the purport and substance of the testimony. Such testimony, as opposed to the inferences which might be reasonably drawn from the facts detailed above, *at the most*, would constitute a conflict upon the question at issue. There is very little or nothing in it to show that the company had a right to interfere with the manner in which the de-

liveries were made—such as the routing of the trucks, rate of speed at which they should travel, or the means and method by which the deliveries were to be made.

As to the contention that the services were personal, "the circumstance that under the contract decedent was to render nondelegable personal services may be persuasive, but it is in no sense conclusive or determinative. Contracts for the rendition of nondelegable personal services are of common occurrence which do not constitute the contractor an employee." (*Fidelity & C. Co.* v. *Industrial Acc. Com., supra.*)

We cannot say, as a matter of law, that the evidence establishes the relationship of employer and employee. That question was, therefore, a matter of fact clearly within the jurisdiction of the Commission, and its order cannot be disturbed.

The order is affirmed.

A petition for a rehearing was denied June 13, 1941.

Petitioner's application for a hearing by the Supreme Court was denied July 11, 1941.