[Civ. No. 16583. Second Dist., Div. Three. Apr. 22, 1949.]

ARTHUR C. ORLINOFF, Appellant, v. FLOYD CAMP-BELL et al., Respondents.

Edward K. Brody and Irving I. Bass for Appellant.

Borah & Borah for Respondents.

SHINN, P. J.—Plaintiff brought this action for the recovery of damages sustained through the alleged breach of an agreement with defendants under which he was to transport goods for defendants throughout Los Angeles County. Defendants answered the complaint and made a motion for summary judgment, which was granted. Plaintiff appeals.

Although the only ground stated in defendants' notice of motion was "that the action of the plaintiff has no merit," it appears from the briefs that the court rendered judgment of dismissal upon evidence that the services agreed to be performed by plaintiff were those of a highway carrier, and that plaintiff was not the holder of a permit to operate as a highway contract carrier or a radial highway common carrier

under the Highway Carriers' Act (Stats. 1935, ch. 223, p. 878 as amended; 2 Deering's Gen. Laws, Act 5129a). The fact that plaintiff held no certificate or permit authorizing him to engage in transportation of property for compensation or hire as a business over any public highway in this state by means of a motor vehicle, or motor vehicles, under the Highway Carriers' Act, was established by affidavit filed in support of the motion, and stands undisputed.

The nature of plaintiff's undertaking must be determined from the contract, a copy of which was attached to the complaint as an exhibit. Its principal provisions were the following: That defendants would furnish to plaintiff for delivery to the trade in Los Angeles County, sufficient beverages and syrups to bring plaintiff's compensation to $4,200 a year, based upon rates of 7 cents per case for deliveries of 100 cases or more to any one address on the same day, and 10 cents per case for the delivery of 99 cases or less to one address on the same day. Plaintiff was to be given 24 hours' notice within which to pick up the goods and agreed to make such deliveries within a period of 48 hours thereafter. The agreement provided: "The party of the second part [plaintiff] agrees to furnish all the motor vehicles and trucks with which to make said deliveries, and that all operating expenses in connection with the said trucks and motor vehicles shall be borne by the party of the second part." Plaintiff was to be paid the amount earned by him on Monday of each week, and the contract was to run for two years.

One of plaintiff's contentions is that he was merely an employee of defendants and therefore not subject to the regulatory statute. This contention is unsound. He was an independent contractor. His only obligation was to produce the results contracted for by methods of his own, furnishing the equipment and carrying all the expense of the operation. Defendants had no control as to the manner in which plaintiff's operation was conducted; they bound themselves for a period of two years to provide plaintiff with an agreed amount of business; and they had no right under the agreement to discharge him. These are the elements of the relationship which classify plaintiff as an independent contractor. (*Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404 [216 P. 578, 43 A.L.R. 1304]; *Luckie* v. *Diamond Coal Co.*, 41 Cal. App. 468 [183 P. 178].)

Plaintiff's operation was that of a highway carrier for which he was required to hold a permit of the Public Utilities

Commission. He alleged part performance on his part and refusal of defendants to provide him with the agreed amount of goods, which was the basis of his claim for damages. His operations were in violation of law, and subjected him to punishment by way of fine and imprisonment, and to civil monetary penalties (Highway Carriers' Act, *supra*, §§ 14, 15) ; but the additional penalty of nonenforceability of his hauling contracts would not necessarily result from the fact that in operating without a license he was guilty of a misdemeanor.

 In order to hold that a licensing statute or ordinance impliedly renders such contracts unenforceable, courts must be satisfied, from a consideration of the scope and purpose of the particular legislation, that the additional penalty follows as a necessary consequence of noncompliance. It is necessary, therefore, to examine the Highway Carriers' Act and the purposes sought to be accomplished thereby

It is uniformly held that where the licensing provisions are for revenue only the contracts of unlicensed persons are not void. (*Wood* v. *Krepps,* 168 Cal. 382, 387 [143 P. 691, L.R.A. 1915B 851] ; *Garvin* v. *Gordon,* 36 N.M. 304 [14 P.2d 264] ; *Ziemer* v. *Babcock & Wilcox Co.,* 22 F.Supp. 384; anno., 30 A.L.R. 848, 118 A.L.R. 650.) The Highway Carriers' Act is clearly one for regulation of the industry and not for revenue alone. There is no provision in the act that contracts made by unlicensed carriers are void or unenforceable. The question whether the courts should impose that additional penalty seems not to have been decided in any reported case. As we shall see, the broad basis for the doctrine that contracts of certain unlicensed persons are unenforceable is that the courts should not lend their aid to the enforcement of contracts where performance would tend to deprive the public of the benefits of the regulatory measures.

The public interest is protected in many instances where personal service is to be rendered by the licensee through a requirement that a license may be issued only upon satisfactory proof of honesty, truthfulness, good reputation, competency or experience. For this reason those who practice the learned professions are required to be licensed, as well as accountants, architects, contractors, brokers, etc. Broad discretion is vested in the licensing agencies with respect to the scope of the examinations to be given, but the purpose in all cases is to screen out the dishonest and incompetent. (*Levin-*

*son* v. *Boas,* 150 Cal. 185 [88 P. 825, 11 Ann.Cas. 661, 12 L.R.A.N.S. 575] [pawnbroker]; *Van Wyke* v. *Burrows,* 98 Cal.App. 415 [277 P. 190] [stockbroker]; *Payne* v. *DeVaughn,* 77 Cal.App. 399 [246 P. 1069] [architect]; *Force* v. *Hart,* 209 Cal. 600 [289 P. 828] [architect]; *Meyer & Holler* v. *Bowman,* 121 Cal.App. 112 [8 P.2d 936] [architect]; *Rench* v. *Harris,* 79 Cal.App.2d 125 [179 P.2d 341] [real estate broker]; *Kirman* v. *Borzage,* 65 Cal.App.2d 156 [150 P.2d 3] [building contractor]; *Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85 [109 P.2d 650] [insurance agent]. See, also, *Estate of Butler,* 29 Cal.2d 644 [177 P.2d 16, 171 A.L.R. 343] [attorney].)

The Highway Carriers' Act differs in some respects from all of the licensing statutes considered in the cited cases in which the contracts of unlicensed persons were held unenforceable. There is no requirement in the act that an applicant for a license must produce evidence of good character, competency, or financial responsibility. Under section 3 of the act the petition for a license is required to set forth the name and address of the applicant, and those of its officers, if any; full information concerning the financial condition and physical properties of the applicant; and such other information necessary to the enforcement of the act as the Public Utilities Commission may require. The section further reads: "Except as otherwise provided in this act, a permit must be issued by the commission upon compliance with this act." The only other condition to be met by the applicant is the furnishing of a public liability bond or equivalent security as indemnity against injuries to or death of one or more persons, or damage to or destruction of property.

It is clear, therefore, that the benefit to the public which the Highway Carriers' Act is intended to accomplish is not to protect against possible dishonesty and incompetence through a screening out of the unfit, as is done in the case of many occupations which call for personal services. From the statute as a whole it appears that its principal purpose is to bring all highway carriers under the jurisdiction of the Public Utilities Commission, and subject to the powers invested in the commission with respect to the fixing of rates for hauling services on public highways. Section 10 of the act requires the commission to establish maximum or minimum, or maximum and minimum rates to be charged by any highway carrier, other than highway common carriers, which latter are subject to the jurisdiction of the commission under

the Public Utilities Act. It seems clear also that the power to fix rates, which is conferred by the act, is one to regulate the general business of trucking on the state highways. The act provides that the policy of the state is "to establish such rates as will promote the freedom of movement of carriers of the products of agriculture, including livestock, at the lowest rates compatible with maintenance of adequate transportation service."

It is obvious that the interests of the general public, as well as those of the trucking industry, are promoted by the establishment of fair and uniform rates which tend to give stability to the industry, and to protect operators against unfair and destructive competition. Prior to the adoption of the Highway Carriers' Act private motor carriers were not subject to the jurisdiction of the Railroad Commission, and they were free to fix their own charges for services rendered. As a consequence, within a few years' time, they had been able to take over a large percentage of the tonnage theretofore transported by rail with the result that the railroads, to meet the competition, were obliged to obtain from the Railroad Commission a reduction in the rates that had been fixed by the commission. The destructive tendency of this unrestrained and unregulated competition was pointed out by the court in *Lang* v. *Railroad Commission,* 2 Cal.2d 550, 564 [42 P.2d 639]: the railroads would eventually drive the tank truck carriers out of business, although this might be accomplished only through placing an undue burden upon shippers of other merchandise. The act now under consideration no doubt was adopted for ·the purposes of correcting the conditions described in the opinion in the Lang case.

██ Although it appears that the services to be rendered by plaintiff were not those of a common carrier, as defined by section 2168 of the Civil Code or the Highway Carriers' Act, his business was nevertheless subject to regulation by the Legislature. In *Morel* v. *Railroad Commission,* 11 Cal.2d 488 [81 P.2d 144], it was held that regulation of the business of private carriers is within the powers conferred upon the commission by section 22 of article XII of the Constitution for the reason that it is cognate and germane to the regulation of the business of common carriers engaged in like transportation. Quoting from *Frost* v. *Railroad Commission,* 197 Cal. 230 [240 P. 26], it was said: "The primary purpose of such regulation is to secure the adequacy, regularity and reliability

of service, and the reasonableness of rates and charges therefor. (*Franchise Motor Freight Assn.* v. *Seavey,* 196 Cal. 77 [235 P. 1000].)'' The same conclusions were reaffirmed by the court in *Entremont* v. *Whitsell,* 13 Cal.2d 290, 302 [89 P.2d 392], in upholding the validity of the Highway Carriers' Act.

The final question is whether the hauling contracts of unlicensed highway carriers should be denied enforcement in the courts. We are constrained to hold that public policy requires that they be not enforced. The reason for this conclusion, of course, is not that some unlawful object was sought to be accomplished by the agreement. It was a valid agreement when it was entered into, and performance under it would have been lawful had plaintiff procured a license for his contemplated operation. It is settled beyond question that the penalty of nonenforceability of contracts, in addition to those of fine and imprisonment, may be a necessary requirement to accomplish the results intended by the legislation, namely, to restrict the regulated business to those who have been duly licensed. It is commonly said that the purpose underlying the rule of nonenforceability is the protection of the public. This may not be questioned. The penalty is not imposed by way of punishment of the individual but is resorted to as a deterrent from conduct which would tend directly to defeat the purpose of the regulatory measure. It is thus that the public interest is benefited. (*Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14] ; *Davis* v. *Chipman,* 210 Cal. 609, 621 [293 P. 40].)

The primary purpose of the rule of nonenforceability being the discouragement of practices forbidden by law, no reason exists for declining to apply it to the contracts of unlicensed highway carriers, as it has been consistently applied to the contracts of unlicensed architects, brokers, and others for the rendition of personal services.

While plaintiff alleges that his contract was terminated by defendants without cause, it was made clear to the court on the motion for summary judgment that good cause did exist for its termination, namely, the invalidity of the contract. If the defendants, with knowledge that plaintiff was unlicensed, had aided him in his operation by further performance on their part, they would thereby have subjected themselves to penalties of fine and imprisonment and civil penalties under sections 14 and 15 of the act. The termination of the agreement by defendants imposed no liability upon

them for damages, not only because the contract was not enforceable by plaintiff, but also because its invalidity furnished a sufficient legal ground for its termination.

In support of his contention that the contract sued on was valid, plaintiff relies on certain statements of the court in *Macco Construction Co.* v. *Farr*, 137 F.2d 52, to the effect that the California City Carriers' Act (Stats. 1935, p. 1057 as amended; 2 Deering's Gen. Laws, Act 5134), which does not differ materially from the Highway Carriers' Act, does not impliedly carry a penalty of nonenforceability of the contracts of unlicensed carriers. The principal holding in the case, however, was that the operation of the contractors did not bring them within the scope of the act inasmuch as the work contracted for did not require the transportation of material on a public highway, and the minor use that was made of the highway in moving material was unsubstantial and purely incidental to the main operation. The language upon which plaintiff relies should not be given effect in circumstances differing essentially from those which the court had under consideration. We do not deem the holding to be contrary to the views we have expressed.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.